SLIP OPINION

Cite as 2015 Ark. App. 292

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-1070

| | |
|---|---|
| | **Opinion Delivered** May 6, 2015 |
| LEXICON HOLDING COMPANY TRISTAR RISK MANAGEMENT<br>APPELLANTS | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G30687] |
| V. | |
| PATRICK HOWARD<br>APPELLEE | AFFIRMED |

## BRANDON J. HARRISON, Judge

Patrick Howard filed a compensation claim against Lexicon Company, alleging that he sustained a compensable injury to his right foot and ankle when he fell down some slick stairs at work. Lexicon initially paid for some of Howard's medical treatment, but it later controverted his claim entirely. In May 2014, an administrative law judge found that Howard proved that his right ankle injury was compensable and that he was entitled to temporary total-disability benefits. The Arkansas Workers' Compensation Commission reversed the ALJ's temporary total-disability award but upheld the ALJ's finding that Howard sustained a compensable injury to his right ankle.

Lexicon Holding Company and Tristar Risk Management (collectively Lexicon) appeal the Commission's decision to award Howard medical benefits. Because substantial evidence supports the Commission's decision, we affirm.

SLIP OPINION

I.

Patrick Howard is a sixty-year-old millwright worker from Illinois who repaired industrial machinery for Lexicon at a plant in Blytheville, Arkansas, during a shut-down period in November 2013.  Howard testified during the administrative hearing that, on November 10, while working at the Nucor Plant during its shutdown, "there was all kinds of grease and oil" on the basement steps, and as he went down the last few steps, his "foot slipped from underneath" him and he fell on his right foot.  Howard's foreman, who was "right in front of" him when he fell, told Howard to stay put and went to get some first-aid supplies; Howard remained seated with his ankle iced the rest of his shift.  Howard said that he "tried working" the next day, because the ankle swelling had gone down some, but that, by around noon, it was bothering him again.  Howard's foreman let Howard sit in his truck, and the foreman did "most of the walking."  After his shift ended on November 11, Howard went to a motel and iced his ankle.  By around three or four that morning, Howard said he "couldn't take no more" and drove to Illinois and sought treatment at an emergency room.  Lexicon's employment records show that Howard failed to report to work on November 12 and that his employment was terminated on November 13.

As mentioned earlier, Howard received treatment at an emergency room in Illinois.  The emergency room doctor ordered x-rays of Howard's right foot and ankle.  Here is an excerpt from Howard's medical records from the ER visit:

HISTORY: Fall, twisted injury

Findings: 3 views right ankle obtained without comparison. Callus formation distal 1 third tibial diaphysis from remote fracture. No acute fracture or dislocation.

Corticated calcification inferior to medial malleolus reflects remote avulsion. Mild lateral malleolar soft tissue swelling. Talar dome intact.

Impression: Remote oblique fracture distal tibia and remote tiny avulsion medial malleolus without acute fracture or dislocation.

Lateral malleolar soft tissue swelling.

Howard received follow-up medical treatment from Dr. Anand Prashanth in Olney, Illinois, on November 15 and 29 and on December 10. Dr. Prashanth noted that Howard had surgery on his right ankle in 1991. Dr. Prashanth noted "no evidence of any swelling" but diagnosed Howard with "insertional Achilles tendon sprain, insertional Achilles tendonitis, and old fractures."

A December 19 MRI revealed a "tear of the peroneus longus tendon." The MRI findings also note:

> There is no significant soft tissue edema about the peroneus longus tear site or in the tendon sheath although this may be related to relatively remote trauma given the date of the ankle radiographs. Mild lateral soft tissue edema is present at the ankle joint.

Meanwhile, on December 12, Howard saw Nurse Practitioner Robert Dougherty, among other things, to receive refills of his prescription medication, to get counseling on smoking cessation, and to address some left-toe pain. Howard did not complain of any right-ankle pain or work-related injury, according to the medical records from Nurse Practitioner Dougherty.

Dr. Joseph Yao, a doctor for Lexicon, saw Howard in Blytheville on December 26. After examining Howard a few times and reviewing the December 19 MRI, Dr. Yao reported, in part:

> [Howard] has done well since his 1991 right ankle injury. There is a question whether the peroneal tendon pathology is acute since there is no fluid surrounding the peroneal tendons (the MRI was done about 1 month following his right ankle injury). If the peroneal pathology is chronic/old and caused no Sx previously, then there is a chance that the current ankle sprain injury will heal with nonsurgical treatment and his symptoms will subside with time and rest . . . Surgery may be necessary if symptoms fail to improve.

Dr. Yao approved Howard to return to light-duty work with a brace and crutches as needed. When Howard's condition was not improving, Dr. Yao recommended that Howard see an orthopedic specialist in Illinois. In a response to Lexicon attorney's request for a demonstration of "acute objective findings," Dr. Yao wrote on 25 February 2014 that Howard's ankle had "swelling" and was "tender." He also pointed out a marked limitation of motion and the peroneus longus tendon tear on the MRI.

Returning to the testimony at the administrative hearing, Lexicon Human Resources Director Danna Gauntt testified that Howard had previously worked at other Lexicon shutdowns. After each shutdown was complete, Howard would have to go through the rehiring process again, including filling out a new application and medical questionnaire, which he did on 20 October 2013. After Howard's injury, Director Gauntt received a tip from an employee, Vin Mansfield (now deceased), that Howard intended to "file a bogus claim with the company." Lexicon later discovered that Howard had made material misrepresentations on his application and medical questionnaire—including that he answered that he did not receive social security disability but he in fact did; he failed to disclose a prior ankle surgery; he failed to disclose that he had been diagnosed with osteoarthritis and COPD; and he failed to disclose that he was taking seven different types of pain medicine when he applied for the job.

Steve Dimeen, Corporate Safety Director, also testified for Lexicon. Dimeen said that he helped get Howard's ankle iced and that Howard never asked to go to a doctor. When Howard returned to work the day after the slip occurred (a Monday), Howard reportedly told Dimeen that "he was a little stiff and a little sore but that he was getting along just fine." When Howard did not show up for work on Tuesday or Wednesday, Dimeen said he became concerned and called Howard's emergency contact number, and that's when he found that Howard had gone back to Illinois.

On cross-examination Howard explained that he did not mention his ankle problems when he visited Practitioner Doughtery "because I figured that was workers' comp." He also admitted, among other things, that he failed to disclose on his October 2013 employment application and medical questionnaire that (1) he received social-security-disability benefits; (2) he had prior back trouble, pain, or injury; and (3) he had used addictive drugs or used alcohol excessively, when he had at least three DUIs. Howard summed it up when he said: "I told you, [all my answers on the questionnaire] they're all false."

On redirect, Howard explained that the plant shutdowns were intense work—twelve-hour days, seven days a week. He also said that he lied on his employment application because he has twenty-six grandkids and "no Christmas or anything for them. . . . that's the only reason I lied on the application is so I could get work to make some money."

On recross, Howard stated, "I lied to get a job from Lexicon. I'm not lying here today because I've got MRIs that show that my foot is messed up and it wasn't messed up before that. There's proof and the doctors have said."

II.

A.

In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences in the light most favorable to the Commission's decision and affirm if it is supported by substantial evidence, *Smith v. City of Ft. Smith*, 84 Ark. App. 430, 432, 143 S.W.3d 593, 595 (2004), which is evidence that a reasonable mind might accept as adequate to support a conclusion. The issue is not whether this court might have reached a different result from the Commission. If reasonable minds could have reached the Commission's result, then we affirm. *Id.*

To prove the occurrence of a specific-incident compensable injury, Howard must establish by a preponderance of the evidence (1) that an injury occurred arising out of and in the scope of his employment; (2) that the injury caused internal or external harm to his body that required medical services or resulted in disability or death; (3) that the injury is established by medical evidence supported by objective findings; and (4) that the injury was caused by a specific incident and is identifiable by time and place of occurrence. *Pafford Med. Billing Servs., Inc. v. Smith*, 2011 Ark. App. 180, at 6, 381 S.W.3d 921, 925–26. "Objective findings" are findings that the patient cannot voluntarily control. Ark. Code Ann. § 11-9-102(16)(A)(i) (Repl. 2012). The weight and credibility of the testimony are exclusively in the Commission's hands. *Stephens Truck Lines v. Millican*, 58

Ark. App. 275, 278, 950 S.W.2d 472, 474 (1997). While we defer to the Commission on issues involving the weight of the evidence and the credibility of the witnesses, the Commission may not disregard testimony arbitrarily; nor is it so insulated as to render appellate review meaningless. *See McDonald v. Batesville Poultry Equipment*, 90 Ark. App. 435, 442, 206 S.W.3d 908, 913 (2005).

B.

Lexicon argues that Howard did not prove he sustained a compensable injury because he presented no objective findings of injury. Here is what the Commission wrote on this point:

> The Full Commission finds that [Howard] proved by a preponderance of the evidence that he sustained a compensable injury. The parties stipulated that the employment relationship existed on November 10, 2013. The claimant testified that he slipped and fell while walking down a set of steps while performing employment services on the respondent–employer's premises. The claimant testified that he landed on his, right foot. Steve Dimeen, the respondents' safety director, testified that he helped administer first aid immediately following the accident. The medical evidence corroborates [Howard's] testimony.

> Reports from Richland Memorial Hospital indicated that the claimant fell and twisted his right heel and ankle. A right ankle radiograph taken November 13, 2013 showed "Lateral malleolar soft tissue swelling." Dr. Prashanth corroborated the claimant's testimony, reporting, "The patient is a 59 year old male who stepped on a greasy surface and slipped going down steps on 11/10/13 at around 5:15 p.m. at his work." Dr. Prashanth assessed a sprain of the Achilles tendon and a lateral collateral ligament sprain. An MRI of the claimant's right ankle on December 19, 2013 showed "Mild lateral soft tissue edema" in the ankle joint, as well as a tear of the peroneus longus tendon. Dr. Yao examined the claimant on December 26, 2013 and reported swelling in the claimant's right ankle. Dr. Yao assessed "Hi grade partial tear to the right peroneus longus tendon."

> . . . .

These objective medical findings include soft tissue swelling in the claimant's right ankle, edema in the ankle joint, and a tear of the peroneus longus tendon. There is no evidence before the Commission demonstrating that these objective medical findings were present prior to the November 10, 2013 accidental injury. The Full Commission therefore finds that these objective medical findings were causally related to the November 10, 2013 accidental injury and were not the result of a prior injury or pre-existing condition.

We must reject Lexicon's arguments about Howard's lack of objective medical evidence given this record. The Commission reviewed the testimony and the medical records. The November 13 x-ray of Howard's right ankle showed soft-tissue swelling, which can be an objective medical finding. *See Meister v. Safety Kleen*, 339 Ark. 91, 3 S.W.3d 320 (1999) (An x-ray that reveals soft-tissue swelling can constitute an objective medical finding.). The MRI—which showed swelling in the ankle joint and that Howard's right peroneus longus tendon was torn—is a diagnostic test that is objective and outside Howard's control. There was no prior medical history showing that Howard had been diagnosed with a torn peroneus longus tendon before the November 10 fall occurred at work. We therefore conclude that there was substantial medical evidence, supported by objective findings, to satisfy Ark. Code Ann. § 11-9-102(16)(A)(i).

Lexicon also argues that Howard was not a credible witness, so there is no credible evidence that the tear in his ankle resulted from his fall at work. Lexicon does not argue that the Commission ignored evidence. Lexicon instead points out, and understandably so, that Howard lied about everything on his application, including his medical questionnaire. The inference is that if he lied about a number of things, then he is lying about his injury. But this court does not retry the facts. The Commission, as fact-finder, could rely on Howard's statement that "I'm not lying here today" and credit his account

of the events surrounding the ankle injury, as it did in its written opinion. *Stephens Truck Lines*, 58 Ark. App. at 278, 950 S.W.2d at 474 (alleged inconsistencies in claimant's testimony that render it unworthy of belief are not a basis for reversal).

As a final point, we mention that Howard did not cross-appeal the Commission's denial of temporary total-disability benefits, so that denial is now final. We therefore find that Lexicon's second point on appeal about the Commission's miscalculation of Howard's average weekly wage, for the purpose of determining the amount of temporary total-disability payments, is moot. *See Chandler v. Martin ex rel. State*, 2014 Ark. 219, 433 S.W.3d 884 (recognizing that an advisory opinion is one that offers an opinion on a moot issue). The accuracy of the wage calculation is inconsequential because Howard is not receiving any temporary total-disability benefits.

## III.

We affirm the Commission's finding that Howard sustained a compensable injury to his right ankle in connection with his work. Consequently, the medical-benefit award is also affirmed.

Affirmed.

GLADWIN, C.J., and ABRAMSON, J., agree.

*Worley, Wood & Parrish, P.A.*, by: *Melissa Wood*, for appellants.

*Thomas W. Mickel*, for appellee.