Cite as 2019 Ark. App. 569

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-19-540

| | |
|---|---|
| M.A. MORTENSON COMPANIES AND ARCH INSURANCE COMPANY/GALLAGHER BASSETT SERVICES, INC.<br><br>APPELLANTS<br><br>V.<br><br>MAE REED<br><br>APPELLEE | **Opinion Delivered** December 4, 2019<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G708560]<br><br><br>AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellants M.A. Mortenson Companies, Arch Insurance Company, and Gallagher Bassett Services, Inc., appeal the decision of the Arkansas Workers' Compensation Commission awarding benefits to appellee Mae Reed. Appellants contend that substantial evidence does not support the Commission's conclusion that Reed's right shoulder injury is compensable. We affirm.

Reed was employed by M.A. Mortenson Companies as an assembler of solar panels. She was the only witness to testify at the hearing before the administrative law judge (ALJ), and her deposition was also admitted into evidence. According to her testimony, she was injured on Saturday, November 18, 2017, when a gust of wind blew a solar panel she was holding into the air and blew her arm back over her head. She was not in pain at that time and continued working, but she did stop the employer's "safety man," Joe Pena, as he drove around checking on employees. Reed said that after she told Pena what had happened, he

contacted her supervisor on his walkie-talkie, and two more employees were sent to help Reed and her coworkers. Reed said that work ended early that day due to strong winds and heavy rain.

The day of the incident was Reed's last scheduled day of work before leaving on a trip out of the country on Tuesday, November 21. She acknowledged that on Monday before her trip, a coworker called and told her that the whole crew was being laid off; however, Reed was not contacted by the employer. Reed said that her pain started Tuesday night, but she did not get any medical treatment while out of the country because no one there spoke English. Reed arrived back home in the early morning hours of November 28 and immediately went to the emergency room.

Reed testified that she told emergency-room personnel that the problems with her shoulder were from a work-related accident; however, the emergency-room records do not reflect this. A "triage note," which provides that Reed was seen at 4:13 a.m., states that "[p]atient states that about a week ago threw right [arm] up and felt like it pulled something, now it hurts all the time since then." The next page of the records provides the following: "Mechanism of injury comment: About a week ago, snatched right shoulder up too quick, hurt ever since, painful and hard to lift." Reed was diagnosed with a strained shoulder and told to follow up with her family physician, Dr. Dennis Yelvington.

Later that same morning, Reed went to the job site to report her injury. She said that the employer became upset with her and wanted to know why she had not let go of the panel when it was blown by the wind. Reed testified that they were taught to not let go of panels because someone could be injured, and on this occasion there were people

2

working behind her. She said that she spoke to Pena, and he remembered her telling him about the incident with the panel; however, Reed's boss told her shortly thereafter that Pena said he did not remember anything. A handwritten statement by Pena dated December 4, 2017, was admitted into evidence. Pena wrote that Reed had made a comment that the winds were making it difficult for her to secure panels, but he said that there was no other conversation about any incident or injury.

Reed saw Dr. Yelvington for her shoulder injury on December 1 and again on December 12. Both office notes state in part that "[t]his is a new problem. The current episode started 1 to 4 weeks ago." Reed testified that she told Dr. Yelvington that she had hurt herself at work, and she did not know where the time frame in the notes came from. The December 1 note does not address how Reed hurt herself, but the December 12 note recounts the wind-blown-panel incident. Dr. Yelvington ordered an MRI and recommended steroid injections and physical therapy for bursitis and "AC joint arthritis." Reed subsequently saw Dr. Kirk Reynolds, whose notes recount the incident on November 18 and that Reed's pain worsened several days later. Dr. Reynolds recommended an injection and physical therapy for a rotator-cuff strain. Reed said that a doctor had told her that fluid was building up in her arm and that this explained why her shoulder did not hurt immediately. She testified that she had never had another shoulder injury.

The ALJ found that Reed had sustained a compensable injury and was entitled to temporary total-disability benefits and reasonably necessary medical treatment. The Commission affirmed and adopted the decision of the ALJ.

3

When reviewing a decision of the Arkansas Workers' Compensation Commission, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission. *Pafford Med. Billing Servs., Inc. v. Smith*, 2011 Ark. App. 180, 381 S.W.3d 921. We must affirm the decision of the Commission if it is supported by substantial evidence. *Id.* Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion of the Commission. *Id.* The issue is not whether this court might have reached a different result from the Commission. *Lexicon Holding Co. v. Howard*, 2015 Ark. App. 292, 462 S.W.3d 696. If reasonable minds could have reached the Commission's result, then we affirm. *Id.* Questions regarding the credibility of witnesses and the weight to be given their testimony are within the exclusive province of the Commission. *Pafford*, *supra*.

To prove the occurrence of a specific-incident compensable injury, the claimant must establish by a preponderance of the evidence (1) that an injury occurred arising out of and in the scope of employment; (2) that the injury caused internal or external harm to the body that required medical services or resulted in disability or death; (3) that the injury is established by medical evidence supported by objective findings; and (4) that the injury was caused by a specific incident and is identifiable by time and place of occurrence. Ark. Code Ann. § 11-9-102(4) (Repl. 2012).

Appellants argue that substantial evidence does not support the Commission's finding that Reed met her burden of proving that her injuries arose from the alleged work-related incident. They note that the testimony of an interested party is always considered to be controverted, *Cooper v. Hiland Dairy*, 69 Ark. App. 200, 11 S.W.3d 5 (2000), and argue that

4

the only evidence that the alleged incident even occurred is Reed's self-serving testimony. Appellants argue that Reed only reported having shoulder pain three days later after she was told she was being laid off. They point out that neither the emergency-room records nor the records from Reed's first visit to Dr. Yelvington reflect that the injury arose from a work incident on November 18 or that the pain began three days later.

Reed argues that her account of the events has not changed even though a report that her pain began earlier would be favorable to her position. She contends that even though the incident did not immediately cause her pain, she considered it significant enough to report it. She further notes that she visited the emergency room in the middle of the night upon returning from her international trip and reported her injury to the employer that same day.

We agree with Reed that the Commission accepted her testimony as credible and that its decision should be affirmed. It is the Commission, not this court, that gets to resolve contradictions, determine the credibility of witnesses, and weigh the evidence. *Marten Transp., Ltd. v. Morgan*, 2017 Ark. App. 608, 532 S.W.3d 139. In *Pafford*, *supra*, the claimant testified that she did not report the incident the day it occurred or seek immediate medical treatment because she did not think it was "any big deal" initially and thought that she had only strained a muscle. The employer argued that the only evidence with regard to the incident came from the claimant's "vague and uncorroborated" testimony. In affirming, we held that the claimant's credibility was exclusively for the ALJ and the Commission to decide, and they had found her to be "an extremely credible witness." As in *Pafford*, Reed's failure to immediately report an injury or provide corroboration regarding the incident is

5

not fatal to her claim because the ALJ and the Commission apparently found her to be a credible witness.

While the emergency-room records do not reflect that Reed reported her injury being work related, Reed testified that she did inform hospital personnel, as well as Dr. Yelvington, of this fact. The fact that Dr. Yelvington's notes from the first visit do not state that the injury was work related is immaterial because those notes do not include any remarks regarding how the injury occurred. Furthermore, we agree with Reed's suggestion that the notation by Dr. Yelvington from both office visits that Reed's pain began "1 to 4 weeks ago" is more likely a time frame chosen by the doctor than reported by Reed. The matter of Reed's credibility was exclusively for the ALJ and the Commission to decide. We hold that substantial evidence supports the decision.

Affirmed.

ABRAMSON and GLADWIN, JJ., agree.

*Dover Dixon Horne PLLC*, by: *Joseph H. Purvis* and *Monte D. Estes*, for appellants.

*The Law Office of Furonda Brasfield, PLLC*, by: *Furonda Brasfield*, for appellee.

6