2012 Ark. App. 546

Lisa TOWLER, Appellant

v.

TYSON POULTRY, INC., Appellee.

No. CA 12–359.

Court of Appeals of Arkansas.

Oct. 3, 2012.

Odom Law Firm, P.A., Fayetteville, by: Conrad T. Odom, for appellant.

Ledbetter, Cogbill, Arnold & Harrison, LLP, Fort Smith, by: E. Diane Graham and Rebecca D. Hattabaugh, for appellee.

JOHN B. ROBBINS, Judge.

Appellant Lisa Towler sustained an admittedly compensable injury to her low back while working for appellee Tyson Poultry, Inc. on April 9, 2008. Tyson paid workers' compensation benefits for the related medical treatment provided to Ms. Towler through July 9, 2010. Tyson also paid temporary total disability benefits from February 16, 2010, through March 9, 2010. Ms. Towler filed a claim for additional medical benefits for treatment received after July 9, 2010, including two back surgeries performed by Dr. James Blankenship on August 18, 2010, and December 15, 2010. Ms. Towler also claimed entitlement to temporary total disability benefits from March 9, 2010, through a date yet to be determined. Tyson controverted Ms. Towler's entitlement to these additional benefits.

After a hearing, the Workers' Compensation Commission denied Ms. Towler's claim for additional medical benefits, finding that she failed to prove that the treatment she received after July 9, 2010, was reasonably necessary in connection with her compensable injury. The Commission also denied Ms. Towler's claim for additional temporary total disability benefits beyond March 9, 2010, on the basis that Ms. Towler reached the end of her healing period for the compensable injury no later than that date. Ms. Towler now appeals, arguing that the Commission's decision denying additional medical and temporary total disability benefits was not supported by substantial evidence. Ms. Towler also contends that, because she

is entitled to these additional benefits, she should be awarded related attorney's fees. We affirm.

We review decisions of the Workers' Compensation Commission to determine whether there is substantial evidence to support them. *Walgreen Co. v. Goode*, 2012 Ark. App. 196, 395 S.W.3d 398. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings. *Id.* Where, as here, the Commission denies claims because of the failure to show entitlement to benefits by a preponderance of the evidence, the substantial—evidence standard of review requires that we affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Engle v. Thompson Murray, Inc.*, 96 Ark.App. 200, 239 S.W.3d 561 (2006). The Commission is the ultimate arbiter of weight and credibility. *Baxter v. Union Standard Ins. Co.*, 2012 Ark. App. 251, 413 S.W.3d 561. The Commission has the authority to accept or reject medical opinions, and its resolution of conflicting medical evidence has the force and effect of a jury verdict. *Id.*

Lisa Towler testified that she is twenty-eight years old and began working for Tyson as a line worker in September 2007, and she was subsequently promoted to a technician in the pet food department. She was performing her job on April 9, 2008, when she slipped and fell on the floor. Ms. Towler reported her injury to her employer that day, but she continued to work and did not initially seek medical treatment. Tyson accepted and paid for medical treatment later provided by Drs. Karl Haws and Rodney Routsong. On July 15, 2008, Ms. Towler was diagnosed with musculoskeletal back pain, and she was treated conservatively with physical therapy and medication. Dr. Haws released Ms. Towler back to work with restrictions of no lifting, pushing, or pulling of greater than fifteen pounds. Ms. Towler returned to work for Tyson, which provided a job within those restrictions.

Ms. Towler continued to work for Tyson until June 1, 2009. On that date, Ms. Towler sustained a non-work-related injury to her left knee when she walked out her front door, her leg pivoted, and she fell to the ground. Ms. Towler came under the care of Dr. Matthew Coker for treatment of her leg injury, and on June 29, 2009, Dr. Coker performed arthroscopic surgery with ACL reconstruction on her left knee. Ms. Towler subsequently developed problems with her right knee, and Dr. Coker performed right-knee arthroscopic surgery on October 12, 2009. Ms. Towler testified that after the medical treatment of her knees was complete, she resumed her back treatment.

Ms. Towler came under the care of Dr. Luke Knox and then Dr. James Blankenship. An MRI performed on January 13, 2010, detected what Dr. Knox called "a rather sizeable disc herniation at L5–S1 on the right." On May 14, 2010, Dr. Knox recommended a surgical decompression at the L5–S1 level. Dr. Blankenship agreed with that assessment, and an August 3, 2010, MRI confirmed the presence of a large herniation at L5–S1. On August 18, 2010, Dr. Blankenship performed a L5–S1 hemilaminotomy and microdiskectomy. This procedure was met with limited success, and Dr. Blankenship performed another surgical procedure on Ms. Towler's low back on December 15, 2010.

Ms. Towler testified that after the August 18, 2010, surgery, her problems consisting of leg numbness, tingling, and severe pain persisted. She stated that the December 15, 2010, surgery helped with

some of her pain, but that she was still being treated for pain and had not yet been medically released. Ms. Towler maintained that she was currently unable to work because of the constant back pain that radiates into her right leg. Although Ms. Towler had returned to work briefly for Tyson with restrictions in February 2010, she has not worked since then and said that she was eventually terminated for being absent.

The medical evidence presented in this case showed that after Ms. Towler was originally seen by Dr. Haws after suffering the compensable injury, Dr. Haws reported on July 15, 2008, that an x-ray of her lumbosacral spine was essentially normal, with no signs of fracture or dislocation. Dr. Haws also gave the opinion that Ms. Towler was exaggerating her symptoms, and reported on July 29, 2008:

> Again, I feel her display of weakness is magnified. She could not overcome the resistance of my index finger holding her lower leg back when trying to extend while seated on the exam table. If she were truly this weak she, in my mind, would be basically unable to walk or stand, which she does quite well in my clinic.

An August 18, 2008, MRI of Ms. Towler's spine showed "very mild annular disc bulging identified at L4–5 and L5–S1 compatible with chronic degenerative changes." Those MRI findings included that "there is no pathologic marrow signal intensity arising from the vertebral bodies that would suggest metastatic disease or healing trauma." On September 23, 2008, Dr. Routsong reported that Ms. Towler had low back pain but that he saw no sign of spinal-nerve compression and did not recommend surgical intervention. Dr. Routsong treated Ms. Towler conservatively and last saw her on March 24, 2009, when he reported that her lumbar spine

radiographs were unremarkable and again said that surgery was not indicated.

Ms. Towler's first argument on appeal is that there is no substantial evidence to support the Commission's decision denying her additional medical benefits beyond July 9, 2010. Pursuant to Ark.Code Ann. § 11–9–508(a) (Repl.2012), employers are required to provide medical services that are reasonably necessary in connection with the injury received by an employee. Ms. Towler contends that the large disc herniation at L5–S1 was a result of her compensable fall, and therefore that her back surgeries and continuing treatment for her back condition are compensable.

In support of her argument, Ms. Towler relies on the opinions of Dr. Knox and her surgeon, Dr. Blankenship. Dr. Knox compared the initial MRI performed on August 18, 2008, with the January 13, 2010, MRI. Dr. Knox reported that the January 13, 2010, MRI indicated a significantly worse condition at the L5–S1 level. On March 18, 2010, Dr. Knox stated that "from the information I have at present, it appears that she injured the disc in August of 2008 resulting in a progression and now frank disc herniation." Dr. Blankenship reported on August 3, 2010, that conservative measures had failed and that "given the fact that her leg pain has been persistent for the past two years and also coupled with the fact that she has not had any significant problems prior to her injury, I do feel that Dr. Knox's recommendation of a microdiskectomy is the most appropriate treatment." Ms. Towler submits that the medical evidence demonstrates that she sustained a disc bulge on April 9, 2008, which worsened into a herniation in 2010, and necessitated the August 18, 2010, and December 15, 2010, back surgeries.

Ms. Towler acknowledges that Dr. Theodore Hronas reviewed the medical records at appellee's request and gave a contrary

opinion to that of Drs. Knox and Blankenship. On June 29, 2010, Dr. Hronas reported:

> The date of injury was reported as 04/09/08. The initial MRI of the lumbar spine dated 08/18/08, performed approximately four months later, demonstrates mild degenerative disc disease at L4/5 and presence of a very small central disc protrusion at L5/S1. There is no evidence of significant central canal stenosis or foraminal narrowing at any level. There is no evidence of vertebral body fracture.

> The following MRI dated 01/13/10, approximately 21 months after the injury, demonstrates stable degenerative disc disease at L4/5, but with interval development of a right paracentral disc protrusion at L5/S1, resulting in narrowing of the right lateral recess with mass effect on the proximal right S1 nerve root. This is a significantly larger disc protrusion than revealed on the 8/18/08 study and is located to the right of the prior small central protrusion. There is no evidence of vertebral body fracture.

> Most traumatic disc herniations are evident on initial imaging studies done shortly after the injury. The four month period between the initial injury and the first MRI examination is more than adequate time for a disc protrusion to fully manifest itself. The standard medical teaching is that disc herniations improve or spontaneously resolve within 12 months after the initial occurrence if left untreated; they generally do not gradually progress or worsen over a period of 18 to 21 months from the original trauma. Therefore, the new protrusion at L5/S1 demonstrated on the 01/13/10 study, approximately 21 months after the injury, is likely the result of a new injury, and unrelated to the fall injury reported on 04/09/08.

Ms. Towler, however, submits that too much weight has been given to the opinion of Dr. Hronas, who never treated her. She further asserts that there was no evidence of any new injury causing her low back problems, and that her non-work-related fall on June 1, 2009, only resulted in knee problems and could not have caused the disc herniation. For these reasons, Ms. Towler contends that she is entitled to all of the additional medical treatment received for her back condition after July 9, 2010.

The claimant has the burden of proving that treatment is reasonably necessary by a preponderance of the evidence, and what constitutes reasonably necessary treatment is a question of fact for the Commission. *Cole v. Commerce & Indus. Ins. Co.*, 2009 Ark. App. 617, 2009 WL 3153322. Where treatment is for other conditions not causally related to the compensable injury, such treatment is not the responsibility of the employer. *See id.*

In the present case the Commission's opinion displays a substantial basis for denying the additional medical treatment received by Ms. Towler after July 9, 2010, which includes both of her back surgeries. After reporting a compensable injury to her employer on April 9, 2008, Ms. Towler continued to work and did not seek medical treatment until visiting Dr. Haws on July 15, 2008. A lumbar-spine x-ray performed that day was essentially normal, and Dr. Haws reported that Ms. Towler was exaggerating her symptoms. An MRI performed on August 18, 2008, showed only mild disc bulging at L5–S1, and Dr. Routsong reported no fracture, dislocation, or spinal-nerve decompression.

None of Ms. Towler's doctors recommended surgery until after the January 13, 2010, MRI detected a large herniation at L5–S1. This MRI came twenty-one months after the compensable injury, and Dr.

Hronas gave a detailed report explaining why this new protrusion was likely the result of a new injury and unrelated to the fall on April 9, 2008. While this opinion differed from those given by Drs. Knox and Blankenship, the Commission specifically credited Dr. Hronas's opinion and we are bound by that determination. Although Ms. Towler claims that there was no evidence of any other accident that caused the herniation, it was her burden to prove that the additional medical treatment was reasonably necessary in connection with the compensable injury. The Commission found that she failed to meet that burden because the medical treatment received after July 9, 2010, was unrelated to her compensable fall at work, and on this record we affirm that finding.

■ Ms. Towler next argues that the Commission erred in failing to award temporary total disability benefits beyond March 9, 2010. To receive temporary total disability benefits, a claimant must prove that she was within her healing period and that she was totally incapacitated from earning wages. *Hickman v. Kellogg, Brown & Root,* 372 Ark. 501, 277 S.W.3d 591 (2008). The healing period is "that period for healing of an injury resulting from an accident." Ark.Code Ann. § 11–9–102(12) (Repl.2012). Ms. Towler assigns error to the Commission's finding that her healing period had ended by March 9, 2010, asserting that she continued to be treated for her compensable injury beyond that date. Ms. Towler notes that she was taken off work in February 2010, underwent two subsequent back surgeries in August and December 2010, and testified that she is still undergoing treatment and is unable to work. Under such circumstances, Ms. Towler contends that she is entitled to temporary total disability benefits from March 9, 2010, to a date yet to be determined.

■ We hold that the Commission did not err in denying Ms. Towler's claim for additional temporary total disability benefits because there was a substantial basis for its finding that her healing period for the compensable injury had ended by March 9, 2010. When Ms. Towler was taken off work in February 2010 it was a result of the recently-detected large herniation that the Commission found to be unrelated to the compensable fall. Because there was a substantial basis for the Commission's finding that the large herniation was not a result of the compensable injury, there was also a substantial basis supporting the Commission's determination that any continuing treatment and disability were also unrelated. There was evidence from which reasonable minds could conclude that Ms. Towler's incapacity to work and extension of her healing period beyond March 9, 2010, were not related to the compensable injury.

Ms. Towler's remaining argument is that because she has proved entitlement to additional medical treatment and total disability benefits, she is statutorily entitled to attorney's fees in accordance with Ark. Code Ann. § 11–9–715 (Repl.2012). However, because we have affirmed the Commission's decision denying additional workers' compensation benefits, we also affirm its denial of attorney's fees.

Affirmed.

PITTMAN and GLADWIN, JJ., agree.