

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-16-732

| | |
|---|---|
| KABIAS DOMINIC BANKSTON<br>APPELLANT<br><br>V.<br><br>UNIVERSITY OF ARKANSAS LITTLE ROCK AND PUBLIC EMPLOYEE CLAIMS DIVISION, STATE OF ARKANSAS     APPELLEES | **Opinion Delivered:** February 1, 2017<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G300647]<br><br><br>AFFIRMED |

## MIKE MURPHY, Judge

Appellant Kabias Bankston sustained an admittedly compensable injury to his neck and lower back while working for appellee University of Arkansas at Little Rock (UALR) on December 14, 2012. UALR paid workers' compensation benefits for the related medical treatment provided, including temporary total-disability benefits, to Mr. Bankston until August 20, 2014. Mr. Bankston then alleged that he was entitled to additional medical treatment and additional temporary total-disability benefits from August 20, 2014, through a date yet to be determined. Mr. Bankston also alleged he was entitled to attorney's fees. UALR controverted Mr. Bankston's entitlement to these additional benefits and fees.

A hearing was held on September 10, 2015, before an Administrative Law Judge (ALJ) who issued an opinion on December 8, 2015. The ALJ found that Mr. Bankston had not met his burden of proving his entitlement to surgery or additional temporary total-

disability benefits, and Mr. Bankston appealed to the full Workers' Compensation Commission (the Commission). On June 21, 2016, the Commission issued a 2–1 majority opinion affirming and adopting the ALJ's decision as its own.

Mr. Bankston now appeals, arguing that the Commission's decision denying lumbar spine surgery and temporary total-disability benefits beyond August 20, 2014, is in error. We find no error and affirm.

Mr. Bankston testified that he was 39 years old at the time of the injury, and he described his duties at UALR as "beautifying the campus, janitorial work, pulling trash, recycling, waxing and buffing floors, and any type of work that was needed for the campus." On December 14, 2012, Mr. Bankston was carrying a wet-vac weighing about 75 pounds up some stairs. He testified that, while he was in the process of putting it down, his back "popped," causing him to feel a burning sensation in his back that radiated into his thighs, making it difficult for him to stand.

Mr. Bankston sought treatment for his injury. At deposition, Dr. Qureshi, who treated Mr. Bankston, testified that his review of Mr. Bankston's January 2013 MRI in March 2013 showed

 (1) A moderate-to-large paracentral disc extrusion at the L1-L2 level,[1]

 (2) Chronic bilateral L5 Pars interarticularis fractures with no associated spondylolisthesis,"[2]

---

[1] Dr. Qureshi testified that this type of injury could be caused by lifting.

[2] Dr. Qureshi explained that the pars interarticularis is a small bone connecting joints in the spine and that when it is fractured it could slip (slipped facet joints are called spondylolisthesis, which Mr. Bankston did not have). Dr. Qureshi said that "[i]t could be

(3) Chronic disc degeneration at the L5–S1 level, and

(4) Epidural lipomatosis in the lower lumbar spine with effacement of the thecal sac at the L4–5 and L5–S1 levels.[3]

Dr. Qureshi concluded that conservative treatment was appropriate, and Mr. Bankston was prescribed pain medicine, physical therapy, a back brace, and epidural steroid injections. Dr. Qureshi saw Mr. Bankston again in July 2013. Mr. Bankston was doing somewhat better, but he still had back pain. At this juncture, Dr. Qureshi noted it was not the L1–L2 disc creating the issues, but the other aforementioned back problems, along with Mr. Bankston's sickle cell anemia, and he recommended continued conservative management.

On August 12, 2014, Mr. Bankston underwent a functional capacity evaluation. During the test he exhibited "numerous inconsistencies which invalidated his entire exam." Mr. Bankston testified that he "did his very best to do what they asked [him] to do during the functional capacity evaluation," but the exam results concluded that he demonstrated an unreliable effort. On August 21, 2014, Dr. Qureshi released Mr. Bankston to full-duty work, as Mr. Bankston had "reached maximum medical improvement," though he did advise Mr. Bankston to "be careful while lifting." Mr. Bankston testified that he had worked over that weekend, then on Monday, August 23, 2014, he spoke with his supervisor "about

genetic . . . it could be a trauma. And it's chronic. Chronic means that it has been there for a long time, and it wasn't acute."

[3] Fatty tissue compressing nerves, causing pain.

[his] situation." His supervisor directed him to write a letter discussing his condition, but instead, Mr. Bankston decided to resign.

Mr. Bankston continued seeing Dr. Qureshi for his back pain over the course of the next year. By April 8, 2015, Dr. Qureshi concluded that Mr. Bankston would benefit from surgery to remove the fat from the spinal canal at L3, L4, and L5, and to fuse L5-S1 to treat the pain associated with the pars interarticularis, the degenerative and desiccated disc, and an annular tear that did not appear until a later MRI was taken over a year and a half after the December 14, 2012 work-related incident.

The ALJ denied Mr. Bankston's request for surgery. The surgery, he reasoned, was to address issues causing Mr. Bankston pain that were unrelated to the injury he sustained in December 2012. The surgery was not to address the disc extrusion at L1–L2 but instead to treat Mr. Bankston's preexisting degenerative conditions.

The ALJ also concluded Mr. Bankston did not establish his entitlement to temporary total–disability from August 23, 2014, to a date yet to be determined. Citing Mr. Bankston's unreliable effort on the functional capacity evaluation and Dr. Qureshi's finding that Mr. Bankston had reached maximum medical improvement and could return to work, he concluded that the preponderance of the evidence established that Mr. Bankston had reached the end of his healing period on August 20, 2014.

Under Arkansas law, the Commission is permitted to adopt an ALJ's opinion. *Godwin v. Garland Cty. Landfill*, 2016 Ark. App. 498, at 4, ___ S.W.3d ___. In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the

Commission. *Id.* Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. *Id.*

We review Commission decisions to determine whether there is substantial evidence to support them. *Towler v. Tyson Poultry, Inc.*, 2012 Ark. App. 546, at 2, 423 S.W.3d 664, 666. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings. *Id.* Where, as here, the Commission denies claims because of the failure to show entitlement to benefits by a preponderance of the evidence, the substantial-evidence standard of review requires that we affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Id.* The Commission is the ultimate arbiter of weight and credibility. *Id.* The Commission has the authority to accept or reject medical opinions, and its resolution of conflicting medical evidence has the force and effect of a jury verdict. *Id.*

I. *Entitlement to Additional Medical Treatment*

Mr. Bankston argues that the ALJ erred in finding that he failed to prove that he was entitled to lumbar-spine surgery because while some of his back problems were preexisting, they were aggravated by the incident in December 2012. It is true that, under Arkansas workers' compensation law, the employer takes the employee as he is found, and an aggravation of a preexisting, noncompensable condition by a compensable injury is, itself, compensable. *Oliver v. Guardsmark, Inc.*, 68 Ark. App. 24, 3 S.W.3d 336 (1999).

Here, the MRI showed a moderate-to-large paracentral disc extrusion at the L1/L2 level, and Dr. Qureshi did testify that such an injury can be caused by lifting. No part of the

recommended surgery, however, was to address any issue at L1/L2. The ALJ did consider that Dr. Qureshi stated that the pars fracture could be worsened by trauma, but he was not certain of it, and the ALJ did not wish to resort to speculation and conjecture on this point. Speculation and conjecture cannot serve as a substitute for proof. *Dena Constr. Co. v. Herndon*, 264 Ark. 791, 796, 575 S.W.2d 155, 158 (1979). Furthermore, the Commission is authorized to accept or reject a medical opinion and is authorized to determine its medical soundness and probative value. *Poulan Weed Eater v. Marshall*, 79 Ark. App. 129, 84 S.W.3d 878 (2002). There was no other evidence that might support a finding that the December 2012 incident exacerbated the pain associated with the desiccated disc, and the annular tear did not appear until an MRI was taken over a year and a half after the December 14, 2012 incident. The ALJ concluded that the recommended surgery for Mr. Bankston was not causally related to his December 2012 injury, and we hold that there was a substantial basis for the denial of relief.

II. *Entitlement to Additional Temporary Total Disability*

Temporary total–disability is determined by the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. An injured employee is entitled to temporary total–disability benefits when he is totally incapacitated from earning wages and remains in his healing period. *Jordan v. Home Depot, Inc.*, 2013 Ark. App. 572, at 3, 430 S.W.3d 136, 138. The "healing period" is defined as the period necessary for the healing of an injury resulting from an accident. Ark. Code Ann. § 11-9-102(12)(Repl. 2012). The healing period continues until the employee is as far restored as the permanent character of his injury will permit. *Myers v. City of Rockport*, 2015 Ark. App. 710, 479 S.W.3d 33, *reh'g*

*denied* (Jan. 20, 2016). When the underlying condition causing the disability becomes stable and when nothing further will improve that condition, the healing period has ended. *Mad Butcher, Inc. v. Parker*, 4 Ark. App. 124, 628 S.W.2d 582 (1982).

The claimant came under the care of Dr. Qureshi following his December 14, 2012, compensable injury. The respondents paid appropriate indemnity benefits to the claimant through August 20, 2014, at which time the claimant was released to return to full-duty work. Just prior to his release to return to work, the claimant had undergone a functional capacity evaluation that reflected that he had put forth an unreliable effort, and the ALJ noted that there were multiple examples of the claimant's inconsistency in effort contained in the report. Mere days after being cleared for work, Mr. Bankston resigned. This evidence constitutes a substantial basis for the denial of relief.

Affirmed.

ABRAMSON and GLOVER, JJ., agree.

*Sheila F. Campbell, P.A.*, by: *Sheila F. Campbell*, for appellant.

*Robert H. Montgomery*, for appellee.