# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-16-832

| | |
|---|---|
| PACKERS SANITATION SERVICES, INC., AND ACE AMERICAN INSURANCE COMPANY<br><br>APPELLANTS<br><br>V.<br><br>CECILIA QUINTANILLA<br><br>APPELLEE | **Opinion Delivered:** April 5, 2017<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G503568]<br><br>AFFIRMED |

**MIKE MURPHY, Judge**

Packers Sanitation Services, Inc. (Packers) appeals the Workers' Compensation Commission's (Commission) determination that Cecilia Quintanilla suffered a compensable injury and is entitled to temporary total-disability benefits. We affirm.

Cecilia Quintanilla, appellee, is a 42-year-old undocumented immigrant from El Salvador. She has lived in the United States for over ten years, and she began working for Packers in February 2015 under the alias Marisa Ramos. She assumed the fake identity because she did not have appropriate documentation to work in the United States. Cecilia worked for Packers cleaning and sanitizing the production line at OK Foods. On May 7, 2015, she was using a pressure hose and chemicals to clean a production line when she stepped back into a two foot by two-and-a-half-foot uncovered drain and fell, injuring her shoulder, hip, and neck. She reported the injury to her supervisor and sought medical attention at an emergency room five days later. Throughout her medical treatment she

consistently testified that she fell at work, hurting her shoulder and arm. X-rays at the emergency room did not show any significant abnormalities, and she was referred to an orthopedist, prescribed pain medication, and given a sling to wear for her left arm.

Two days later Cecilia saw an orthopedist. She told him that after the accident she initially "could not hardly lift her arm." She said it was a little better, but she was still in a "severe amount of pain." The orthopedist's notes provide that Cecilia said she had never had shoulder pain before, or hurt anything else in the injury. He released her to work, restricting her to using only one hand, but Packers terminated Cecilia's employment because, through the workers'-compensation claim, they had discovered she was using an alias and not legally authorized to work in the United States.

Cecilia continued to receive treatment for her shoulder pain and underwent an MRI of her injured shoulder on July 15, 2015. The MRI showed that she had an "inferior acromial spur with mild impingement with a trace of fluid subacromial bursa, some signal distal supraspinatus tendon without retraction, and probable focal tendonopathy." Her doctor recommended continued conservative care and follow-up if further problems arose. A little over three months after her injury she saw a new doctor who concluded that Cecilia had reached maximum medical improvement and had no permanent impairment.

The administrative law judge (ALJ) concluded that Cecilia had not suffered a compensable injury to her neck, hip, or shoulder and was not entitled to additional medical benefits. The Commission reversed the ALJ as to the shoulder injury. Packers now appeals, arguing that Cecilia did not suffer a compensable injury, or that, if she did, she was not

 

entitled to temporary total-disability benefits because of her status as an unauthorized alien with respect to employment as contemplated by federal law.

## I. *Standard of Review*

We review Commission decisions to determine whether there is any substantial evidence to support them. *Towler v. Tyson Poultry, Inc.*, 2012 Ark. App. 546, at 2, 423 S.W.3d 664, 666. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings. *Id.* Where, as here, the Commission denies claims because of the failure to show entitlement to benefits by a preponderance of the evidence, the substantial-evidence standard of review requires that we affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Id.* The Commission is the ultimate arbiter of weight and credibility. *Id.*

## II. *Compensable Injury*

Packers first argues that there were no objective findings to support Cecilia's shoulder injury, because (1) the findings were based on complaints of pain, (2) the ER reports indicating "shoulder pain-swelling" is just a description for a billing code and not an objective finding; and (3) that the MRI shows only a preexisting condition (the spur).

In Arkansas workers' compensation law, a compensable injury includes accidental injuries that cause physical harm requiring medical services when they occur in the course of employment. Ark. Code Ann. § 11-9-102(4)(A)(i)(Repl. 2014). Compensable injuries must be established by objective findings, Ark. Code Ann. § 11-9-102(4)(D), and "objective findings" are those findings that cannot come under the voluntary control of the patient.

Ark. Code Ann. § 11-9-102(16)(A)(i). Furthermore, complaints of pain and muscle tenderness are not considered objective findings under the statute. *Pafford Med. Billing Servs., Inc. v. Smith*, 2011 Ark. App. 180, at 7–8, 381 S.W.3d 921, 926.

The objective findings supporting Cecilia's injury were detailed in the Commission's opinion. They included the ER clinical-diagnosis report of "shoulder pain-swelling" and that the doctor prescribed her pain medication, a shoulder sling, and a referral to an orthopedist. The assessment record also indicated "left shoulder, neck and hip pain after falling at work on 05/07" and a "limited" range of motion in the left shoulder. An MRI further showed a bone spur and significant inflammation.

Packers argues that, given Cecilia's age and history of medium to heavy work, it is more likely than not that the spur shown in the MRI predated the events of May 7, 2015, and that the bone spur is what is causing the pain. In his report, however, Dr. Holder opined that "work activities have aggravated an underlying, pre-existing condition." The Commission has the authority to accept or reject medical opinions, and its resolution of conflicting medical evidence has the force and effect of a jury verdict. *Towler, supra*. Furthermore, under Arkansas workers'-compensation law, the employer takes the employee as she is found, and an aggravation of a preexisting noncompensable condition by a compensable injury is, itself, compensable. *Oliver v. Guardsmark, Inc.*, 68 Ark. App. 24, 3 S.W.3d 336 (1999). As such, it was not error for the Commission to conclude that Cecilia suffered a compensable injury when she tripped and fell on May 7, 2015, even if that injury was just an aggravation of a preexisting shoulder spur.

III. *Temporary Total Disability and Undocumented-Worker Status*

The purpose of the workers'-compensation law is to pay benefits to legitimately injured employees who suffer an injury arising out of and in the course of their employment. Ark. Code Ann. § 11-9-101(b). "Disability" is defined as an "incapacity because of compensable injury to earn, in the same or any other employment, the wages which the employee was receiving at the time of the compensable injury," Ark. Code Ann. § 11-9-102, and temporary total disability is determined by the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Ark. Highway & Transp. Dep't v. Breshears*, 272 Ark. 244, 613 S.W.2d 392 (1981). An injured employee is entitled to temporary total disability compensation during the period of time that he is within his healing period and totally incapacitated to earn wages. *Id*. The "healing period" is defined as the period necessary for the healing of an injury resulting from an accident. Ark. Code Ann. § 11-9-102(12). The healing period continues until the employee is as far restored as the permanent character of his injury will permit. *Mad Butcher, Inc. v. Parker*, 4 Ark. App. 124, 628 S.W.2d 582 (1982).

Cecilia was injured on May 7, 2015, released to return to restricted employment on May 14, 2015, and reached maximum medical improvement on August 27, 2015. Cecilia worked for Packers spraying a production line with a high-pressure hose. The Commission reasoned this was work that she could not have done with one arm and observed that the record does not indicate that one-handed duty with the employer was available. The Commission found that, accordingly, Cecilia was entitled to temporary total-disability benefits from May 8, 2015, to August 27, 2015. Packers does not dispute this reasoning;

instead, it argues that, even if Cecilia had sustained a compensable shoulder injury, her incapacity to earn wages was because she was preempted from doing so by federal law, not because of her injury.

Other courts addressing similar issues center a significant portion of their analyses on defining "employee" under their own laws. Michigan and Ohio both have language "including aliens" in their definitions. *Sanchez v. Eagle Alloy, Inc.*, 658 N.W.2d 510, 514 (Mich. 2003); *Rajeh v. Steel City Corp.*, 813 N.E.2d 697, 700 (Ohio 2004). In both situations, not differentiating between legal or illegal aliens meant the illegal aliens were entitled to workers' compensation benefits. Other states' definitions do not mention aliens at all and instead contemplate employees as "any person" or "every person" in service of others, and those courts have reasoned that, because aliens were not explicitly labeled as exceptions, their legislators intended them to be included. *See, e.g.*, *Del. Valley Field Servs. v. Ramirez*, 105 A.3d 396, 402 (Del. Super. Ct. 2012), *aff'd sub nom. Del. Valley Field Servs. v. Melgar-Ramirez*, 61 A.3d 617 (Del. 2013) ("every person"); *Asylum Co. v. D.C. Dep't of Emp't Servs.*, 10 A.3d 619, 625 (D.C. 2010) (same); *Dowling v. Slotnik*, 712 A.2d 396, 399 (Conn. 1998) ("any person").

Arkansas Code Annotated section 11-9-102(9)(A), in pertinent part, defines an "employee" as "any person, including a minor, whether lawfully *or unlawfully employed* in the service of an employer under any contract of hire." (Emphasis added.) It is clear that our legislature intended to provide workers'-compensation benefits to people in Cecilia's position, as our statute expressly includes in its definition of any person, whether lawfully or unlawfully employed.

Packers attempts to sidestep our law's inclusive language with the concession that Cecilia's undocumented status may not preclude her from getting treatment for her shoulder, but it is the reason she cannot work going forward and the reason why they should not have to pay her temporary total-disability benefits. This is not persuasive, and as pointed out by courts that have addressed this argument head-on, ignores the fact that people in Cecilia's position would still be able to lawfully work in their own countries or possibly another country but for their compensable on-the-job injuries. *See e.g.*, *Rajeh,* 813 N.E.2d at 703; *Asylum*, 10 A.3d at 630; *see also Cherokee Indus, Inc. v. Alvarez*, 84 P.3d 798 (Oala. Civ. App. 2003) (undocumented worker meeting definition of "employee" was, standing alone, enough to sustain an award of temporary total-disability benefits).

Nor was Packers able to point to any part of our law that implies disability is determined by the extent to which a compensable injury has affected the claimant's ability to earn a livelihood…unless a claimant is precluded by some other means.[1] In crafting our workers'-compensation laws, the General Assembly was explicit: "[I]f the scope of the workers' compensation statutes need to be liberalized, broadened, or narrowed, those things shall be addressed by the General Assembly and should not be done by administrative law judges, the Workers' Compensation Commission, or the courts." Ark. Code Ann. § 11-9-1001. We cannot write in what is not there. Consequently, Cecilia's legal status is irrelevant

---

[1]Some states do have such provisions. West Virginia, for example, does not allow temporary total-disability benefits to claimants who are incarcerated during the term of their disability. W. Va. Code Ann. § 23-4-1e.

to whether she may take advantage of the benefits afforded to her by Arkansas law, including temporary total-disability benefits.[2]

Instead, Cecilia's situation can be likened to one in which a person is fired for cause after sustaining a compensable injury. In *Tyson Poultry, Inc. v. Narvaiz*, Narvaiz had been injured on the job and was working light duty when he swore at his supervisor. 2012 Ark. 118, 388 S.W.3d 16. Tyson suspended, then terminated, Narvaiz for insubordination and gross misconduct. *Id.* at 2, 388 S.W.3d at 18. The ALJ denied Narvaiz temporary total-disability benefits for the remainder of his disability period; the Commission reversed the ALJ's decision, finding that termination for misconduct is not a sufficient basis for a finding that the employee refused suitable employment under Arkansas law.[3] *Id.* This court reversed the Commission, departing from *Superior Industries v. Thomaston*,[4] reasoning that there is some point at which nonperformance or insubordination constitutes an effective refusal of suitable employment, and calling your boss a "mother-f--king bitch" should reach it. *See Tyson Poultry, Inc. v. Narvaiz*, 2010 Ark. App. 842, *vacated*, 2012 Ark. 118, 388 S.W.3d 16.

---

[2]Moreover, to hold otherwise may create a financial incentive for employers to hire illegal workers to the detriment of both competitors who want to follow the law and those seeking lawful employment. *See, e.g.*, *Moyera v. Quality Pork Int'l*, 825 N.W.2d 409, 420 (Neb. 2013); *Dowling*, 712 A.2d at 404.

[3]Arkansas Code Annotated section 11-9-526 provides that an injured employee who refuses suitable employment shall not be entitled to compensation during the period of her refusal.

[4]72 Ark. App. 7, 32 S.W.3d 52 (2000) (holding termination for misconduct was not a sufficient basis for finding that a claimant refused suitable employment so as to disqualify him from disability benefits under Ark. Code Ann. § 11-9-526).

Our supreme court vacated this court's decision and affirmed the Commission. In doing so, it observed that *Thomaston* had been precedent for almost 12 years at the time of writing and that the General Assembly had not made any changes to the statute. Given that "the General Assembly is presumed to be familiar with the appellate courts' interpretation of a statute," our supreme court reasoned that, by not having amended the statute, the legislature consented to this interpretation. *Narvaiz*, 2012 Ark. 118, at 6–7, 388 S.W.3d at 20–21 (citing *City of Fort Smith v. Carter*, 364 Ark. 100, 111 4 n., 216 S.W.3d 594, 601 4 n. (2005)). Thus, when a claimant is terminated, not by his or her choice, but at the option of the employer, he or she is not precluded from disability benefits under Arkansas Code Annotated section 11-9-526. *Id.* at 8, 388 S.W.3d at 22. Our statute remains unchanged.

There is no dispute that Cecilia assumed a fictitious name and Social Security card to gain employment at Packers, and this court does not condone these actions in the slightest, but Cecilia was performing services for Packers and receiving compensation for it. During the course of that employment she sustained a compensable injury and did not reach maximum medical improvement until almost three months later. She was fired before the period of her disability ended, but because she did not leave voluntarily, she is entitled to temporary total-disability benefits for the duration of that disability. Whether she is an undocumented worker is inconsequential to this analysis. The Commission did not err on this point.

Affirmed.

GLADWIN and HARRISON, JJ., agree.

*Frye Law Firm, P.A.*, by: *William C. Frye*, for appellants.
*Stephen M. Sharum*, for appellee.