

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-17-193

MARTEN TRANSPORT, LTD; ZURICH
AMERICAN INSURANCE COMPANY;
AND CANNON COCHRAN
MANAGEMENT SERVICES, INC.

APPELLANTS

V.

KEVIN MORGAN

APPELLEE

**Opinion Delivered:** November 1, 2017

APPEAL FROM THE ARKANSAS
WORKERS' COMPENSATION
COMMISSION

[NO. G509328]

AFFIRMED ON DIRECT APPEAL;
AFFIRMED ON CROSS-APPEAL

## MIKE MURPHY, Judge

This appeal arises from a workers' compensation claim in which appellee/cross-appellant Kevin Morgan injured himself when he tripped and fell while making a delivery for the appellant/cross-appellee Marten Transport, Ltd. (Marten Transport) on November 7, 2015. Marten Transport appeals the Workers Compensation Commission's (Commission) determination that Morgan suffered a compensable injury. Morgan cross-appeals the Commission's decision to modify his temporary total disability. We affirm on both direct appeal and on cross-appeal.

At the time of the accident, Morgan was a forty-four-year-old truck driver for Marten Transport. On direct examination, Morgan described the incident as follows:

Q. Will you briefly explain how your accident occurred on that day?

A. Yes. I was making a delivery at a WalMart store in Monticello, Arkansas . . . I pulled around to the back of the store and backed into their unloading dock and I got out of the truck and was going to the vendor's door . . . I walked up to the vendor's door and I noticed their doorbell wasn't working . . . I left my phone in the truck, so I turned around and was walking back to the truck to get my phone out of the truck and it was dark outside and I walked right into a blue ship pallet [lying] on the ground and fell on both knees, both hands into the asphalt . . .

Q. Did you at some point report it to anybody in a supervisory position at Marten Transport?

A. Yes, I called—all we had is dispatch.

Q. When did you report it to dispatch?

A. Like ten minutes after it happened . . . I told them I needed to go to a doctor and they told me that I needed to get that truck back to Clarksville and not leave it there. . . .

Q. Did you get the truck back to Clarksville?

A. Yes.

Q. Did you at some point receive medical attention in regards to your accident?

A. Yes, as soon as I got back to Clarksville.

According to the record, Morgan was treated at Johnson Regional Medical Center on November 8, 2015. An emergency-room physician signed a note on November 8, 2015, indicating that Morgan could "return to work on 11/9/15 – No restrictions."

Morgan testified that he returned to work for Marten Transport the next day for "four or five hours" but that his employer's human-resource representative took him off work on or about November 10, 2015, because he had broken his glasses in the fall and had a restriction on his CDL that he could not drive without them. Morgan returned to work on November 17, 2015. He then saw his family doctor on November 23, 2015, for back-related pain, and his doctor took Morgan off work at that time. The diagnosis from that

visit was low-back pain, and the doctor recommended light duty work due to radicular symptoms.

Morgan testified that he had not returned to work for any employer since November 23, 2015, and that Marten Transport terminated his employment on or about December 5, 2015, for not disclosing treatment associated with a car wreck when he first started working for them. Morgan saw his family doctor again on December 7, 2015, and his doctor determined Morgan's symptoms continued such that Morgan should remain off work at least until January 8, 2016. Marten Transport had an orthopedic surgeon review Morgan's records on December 11, 2015. The surgeon opined that Morgan's end-of-healing period was reached by December 4, 2015. On January 8, 2016, Morgan's family doctor signed another note indicating Morgan "[w]as unable to attend work on 01/08/16 through 02/12/16 due to injury."

Around April 11, 2016, Morgan sought an independent medical examination by a neurosurgeon, Dr. Michael Calhoun. Dr. Calhoun identified disc herniations in an MRI and opined within a reasonable degree of medical certainty that those herniations were the result of the November 7, 2015 fall. He further opined that Morgan required additional treatment and had not reached maximum medical improvement.

Unbeknownst to Morgan, on April 4, 2016, Marten Transport had a private investigator conduct surveillance on him. The investigator reported that he had witnessed Morgan drive his pickup truck while pulling a boat trailer, fuel the boat at a gas station, unload his boat at the Arkansas River and drive it around, load the boat back onto the trailer, and drive back to his house. Marten Transport sent a DVD of a portion of the video

surveillance collected by the private investigator to Dr. Calhoun on or around April 28, 2016. After having reviewed the DVD and report, Dr. Calhoun revised his opinion to provide that he believed Morgan could work in a light-duty setting without walking or standing restrictions. Notably, Dr. Calhoun did not revise his opinion on whether Morgan had reached maximum medical improvement.

A hearing was held on May 12, 2016, and the administrative law judge found that Morgan had sustained a compensable injury on November 7, 2015, and was entitled to temporary total-disability benefits from that date to a date yet to be determined. Marten Transport appealed this ruling to the Commission. The Commission affirmed the administrative law judge as to the finding of a compensable injury but reversed it in part as to the temporary total-disability benefits. Instead, it found that Morgan had reached the end of his healing period no later than April 28, 2016, and awarded him temporary total-disability benefits to that date. Marten Transport now appeals the Commission's ruling, and Morgan cross-appeals the Commission's modification of the temporary total-disability benefit award.

We review Commission decisions to determine whether there is any substantial evidence to support them. *Towler v. Tyson Poultry, Inc.*, 2012 Ark. App. 546, at 2, 423 S.W.3d 664, 666. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings. *Id*. The Commission is the ultimate arbiter of weight and credibility. *Id*.

Marten Transport first argues that substantial evidence does not support the Commission's finding that Morgan suffered a compensable injury. It points to the medical evidence, Morgan's testimony, and testimony of the other witnesses to support its position.

In Arkansas Workers'-Compensation law, compensable injuries include accidental injuries that cause physical harm requiring medical services when they occur in the course of employment. Ark. Code Ann. § 11-9-102(A)(i) (Repl. 2012). Compensable injuries must be established by objective findings, Ark. Code Ann. § 11-9-102(4)(D), and "objective findings" are those findings that cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i). Furthermore, complaints of pain and muscle tenderness are not considered objective findings under the statute. *Pafford Med. Billing Servs., Inc. v. Smith*, 2011 Ark. App. 180, at 7–8, 381 S.W.3d 921, 926.

Marten Transport argues that Morgan had a history of back problems and discusses two emergency-room visits Morgan made (one in 1998 following an incident while shoveling snow and another in 2006 following a car accident) and the contradictory testimony Morgan provided when questioned about these events. Marten Transport also points to the fact that Morgan was able to drive his rig three hours immediately following the accident, return to work for a few hours the next day, and that he was only removed from work for a week because he needed new glasses. However, it is the Commission, not this court, that gets to resolve contradictions, determine the credibility of witnesses, and weigh evidence. *Patterson v. Frito Lay, Inc.*, 66 Ark. App. 159, 992 S.W. 2d 130 (1999).

Marten Transport suggests Morgan's back problems are chronic and therefore not compensable, but fails to point to any evidence to indicate that he had a herniated disc prior

to the November 7, 2015 fall. There was testimony that Morgan had passed a physical exam for Marten Transport when he was hired and that Morgan had a long history of working labor-intensive jobs with no trouble. Other objective findings that support Morgan's injury were detailed in the Commission's opinion. They included the reports from Morgan's visits to his family doctor that document back pain, radicular symptoms, and paraspinous muscle spasms. They also included a letter from Dr. Calhoun that discussed findings from an MRI that indicated Morgan suffered acute disc herniation that he causally correlated to the incident at work. The Commission has the authority to accept or reject medical opinions, and its resolution of conflicting medical evidence has the force and effect of a jury verdict. *Towler, supra.* Accordingly, it was not error for the Commission to conclude that Morgan suffered a compensable injury when he tripped and fell on November 7, 2015.

On cross-appeal, Morgan argues that the Commission erred when it determined that his healing period ended on April 28, 2016.

Temporary total disability is determined by the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. An injured employee is entitled to temporary total-disability benefits when he is totally incapacitated from earning wages and remains in his healing period. *Jordan v. Home Depot, Inc.*, 2013 Ark. App. 572, at 3, 430 S.W.3d 136, 138. The "healing period" is defined as the period necessary for the healing of an injury resulting from an accident. Ark. Code Ann. § 11-9-102(12). The healing period continues until the employee is as far restored as the permanent character of his injury will permit. *Myers v. City of Rockport*, 2015 Ark. App. 710, 479 S.W.3d 33, *reh'g denied* (Jan. 20, 2016). When the underlying condition that caused the disability becomes stable and when

nothing further will improve that condition, the healing period has ended. *Mad Butcher, Inc. v. Parker*, 4 Ark. App. 124, 628 S.W.2d 582 (1982).

In making its finding regarding temporary total-disability benefits, the Commission noted first Dr. O'Brien's opinion that Morgan had reached the end of his healing period no later than December 4, 2015. It then compared that assessment to Morgan's family doctor's decision to keep Morgan off work and Dr. Calhoun's assessment that, as of April 11, 2016, Morgan had not reached maximum medical improvement and remained in his healing period. The Commission next explained that Dr. Calhoun later revised his opinion on April 28, 2016, when he reviewed video footage of Morgan taking his boat out on April 11, 2016, to provide that

> with a reasonable degree of medical certainty, Mr. Morgan can work in a light duty setting with the main restrictions now of no lifting or carrying more than 20 pounds and [no] repetitive bending or twisting at the waist. After watching him walk, I no longer think he needs the walking or standing restrictions previously outlined on the independent medical evaluation dated April 11, 2016.

Morgan argues this is error because, notably, Dr. Calhoun did not revise his opinion to say that Morgan had reached the end of his healing period and thus the Commission's decision is in error. However, as previously noted, it is within the Commission's province to weigh the medical evidence and determine what is most credible. *Minn. Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999). Here, the Commission found that Dr. Calhoun's April 28, 2016 letter was corroborated by the record and entitled to significant evidentiary weight. The Commission went on to find that the evidence of record, including the surveillance footage, shows Morgan able to walk, bend, and drive a vehicle. Sufficient

SLIP OPINION

evidence supports the Commission's finding that Morgan had reached the end of his healing

period no later than April 28, 2016. On this point we affirm.

Affirmed on direct appeal; affirmed on cross-appeal.

GRUBER, C.J., and HIXSON, J., agree.

*Mayton, Newkirk & Jones*, by: *David C. Jones*, for appellants.

*Walker, Shock & Harp, PLLC*, by; *Eddie H. Walker, Jr.*, for appellee.