RITA W. GRUBER, Chief Judge
Appellants National Park Community College (NPCC) and the Public Employee *913 Claims Division appeal the decision of the Arkansas Workers' Compensation Commission (the Commission) affirming and adopting the decision of the administrative law judge (ALJ) awarding appellee Melinda Castaneda benefits under Arkansas Code Annotated section 11-9-505(a) (Repl. 2012). We affirm.
Castaneda, an employee of NPCC, sustained a compensable right-shoulder injury on June 5, 2015, during a team-building exercise. In March 2017, the ALJ held a hearing to determine (1) additional temporary total-disability benefits or, in the alternative, permanent partial-disability benefits for her shoulder injury; (2) wage loss and benefits under Ark. Code Ann. § 11-9-505(a) ; (3) vocational rehabilitation; and (4) attorney's fees.
At the hearing before the ALJ, Castaneda testified that she began working full time at NPCC in 2009 or 2010. Her employment was pursuant to a yearly contract, which she signed in April or May for the following school year. She was paid throughout the entire year but worked only during the school year. Castaneda explained that she was an assistant to three instructors. Her job duties included taking attendance, grading papers, and substitute teaching. Castaneda explained that when she met with her supervisor, Jason Hudnell, in April or May 2015 to renew her contract for the 2015-2016 school year, he informed her that her job would be discontinued after the 2015-2016 school year due to finances.
Castaneda injured her shoulder on June 5, 2015, and was off the following two months for the summer break. She started back to work in August or September 2015 and worked until September 28, 2015, when Dr. Rudder performed surgery to repair her torn rotator cuff. Castaneda continued to see Dr. Rudder and had physical therapy for eight months until he released her in May 2016; she contacted Wanda Holden in human resources after each visit to Dr. Rudder to apprise NPCC of her situation. Castaneda testified that she was no longer employed by NPCC by the time she was released to work. She explained that she received an email on a Thursday stating that if she did not return to work by 8:00 a.m. the next morning, she would not have a job. Castaneda called Holden on Monday morning to inform Holden that Dr. Rudder had not released her to work. Castaneda testified that when she called Holden, Holden told her that her FMLA leave had run out and that she should have reported to her job in a timely manner. Castaneda also received a termination letter in the mail dated March 29, 2016, stating she would be terminated as of April 1, 2016. The termination letter also requested her to repay insurance premiums paid on her behalf while she was on leave.
Two emails sent to Castaneda by Janet Brewer, associate vice-president of human resources for NPCC, were introduced into evidence. The first, sent March 17, 2016, provided in part:
Your doctor released you to come back to work on March 15 as stated below. You have been under the Family Medical Leave during this time. You are entitled to 12 weeks in a calendar year. You have used approximately 10 weeks of that time. If you wish to remain under FMLA for the remaining two weeks, then you must provide an updated certificate.
The second email, sent March 29, 2016, provided in part:
You have used your 12 weeks of FMLA for the calendar year 2016. After visiting with Jason [Hudnell], it is necessary that this position be covered for the remainder of the year and the need has become critical. Since you are unable to return to work, we will need to replace your position. Your employment will be *914 terminated effective Friday, April 1, 2016.
Castaneda received workers'-compensation benefits after she was terminated until she was released by Dr. Rudder on May 18, 2016. Castaneda testified that when she was released to work, NPCC had employment available within her restrictions but she was not offered employment. She testified that she did not contact NPCC about returning to work when she was released or apply for other jobs at NPCC. She stated that her job was not phased out and that someone was still doing the job that she had performed. Castaneda testified that she wanted to return to work.
Janet Brewer testified about the two emails she sent Castaneda. Brewer acknowledged that they did not offer Castaneda any work following her release in May 2016, explaining that she was no longer employed with NPCC and that they do not typically call people to return to work who have already been terminated. Brewer indicated that Castaneda was aware when she signed her contract in April or May 2015 that it would be her last year of employment in that position. She stated that positions occasionally come open during the school year that require various qualifications, and Castaneda was told she could apply for additional positions with NPCC during that year.
In regard to whether Castaneda's former position still existed, Brewer testified that there was not a full-time teacher's-aide position but that there was an hourly extra-help person in the department in which Castaneda had worked. The extra-help position is limited to 29 hours a week. Brewer stated that Castaneda was not offered this position or any position after her release. Brewer was not certain what jobs had been available within Castaneda's restrictions when she was released to work, nor was Brewer aware of her release at that time. Brewer stated that she did not call Castaneda about open positions, and Castaneda did not call her.
Brewer testified that she had documentation that Castaneda was released to work on March 15, 2016, but she did not have that documentation at the hearing. She explained that she and Hudnell both expected Castaneda to return to work on March 15. Brewer sent her an email to that effect and followed up with an email when Castaneda did not return to work. Brewer stated that Castaneda told her that she was not supposed to be back at work and had a doctor's appointment the following week. Brewer then contacted Rhonda Murphy with "workers' comp" who confirmed that Castaneda had a follow-up appointment the next week. It was at this point that Brewer learned Castaneda had not yet been released.
Brewer testified that Castaneda's FMLA leave was exhausted or about to be exhausted when she spoke with Hudnell about needing someone in place for the remainder of the year. She explained that there is a time during the year when they go out and do clinicals, so it takes several people to work in that area during such time. Brewer indicated that it was critical that they use the funds they were spending on Castaneda's benefits to have someone in her position. Brewer testified that they had to recruit someone for the position, but she was not aware if that person was still in the position. With regard to Castaneda's termination, Brewer testified that the termination was based on the expiration of Castaneda's FMLA leave and the "critical" need for someone in that position. Brewer explained that when they do a reorganization, they try to place an employee in another position. She expressed that Castaneda was a good employee and one for whom they would have tried to find another position.
Jason Hudnell testified that when Castaneda was employed, he was the director *915 of the NPCC technology center, a high school career center, and was Castaneda's supervisor. With regard to the elimination of Castaneda's position, Hudnell expressed that with high enrollment, it became necessary to hire an additional full-time instructor instead of having a teacher's aide. Hudnell informed Castaneda in April or May 2015 that her position would be eliminated at the end of the following school year; he expressed to Castaneda that he would release her while she was under contract if she found an opportunity that was better for her. Hudnell testified that he never told her he would make sure she had a job at NPCC.
Hudnell was not aware that Castaneda was injured until they returned to school in August or September. He stated that he spoke with Castaneda a few times while she was off work and that she was apologetic. He stated that her absence became a strain on the instructors, and there was a critical need to have someone in that position during April and May because those months are busy due to the students shadowing. Hudnell testified that he spoke with Brewer to let her know they needed someone in that position. He indicated that an hourly extra-help person was hired to start from early April through the end of the school year. He was not aware if NPCC offered Castaneda any employment when she was released. Hudnell never heard from Castaneda after she was released on May 18, 2016; he stated that school is technically over by that date.
In a May 2017 opinion, the ALJ found (1) that Castaneda had failed to establish that her healing period extended beyond May 18, 2016; (2) that Castaneda had no impairment as a result of her compensable right-shoulder injury; (3) that because Castaneda had no compensable impairment, her claim for permanent disability in excess of anatomical impairment was denied; (4) that because Castaneda had no compensable permanent disability, her claim for vocational rehabilitation was denied; (5) that Castaneda established by a preponderance of the evidence that she was entitled to benefits under Ark. Code Ann. § 11-9-505(a) beginning May 19, 2016, and continuing for one year; and (6) that since Ark. Code Ann. § 11-9-506 makes no reference to benefits owed pursuant to Ark. Code Ann. § 11-9-505(a), NPCC and its insurance carrier are not entitled to reduce Castaneda's benefits under Ark. Code Ann. § 11-9-505(a) by any amount of money that she has previously received for the same period as unemployment-insurance benefits.
NPCC appealed to the full Commission, and in October 2017, the Commission affirmed and adopted the ALJ's opinion as its own.[1] One commissioner dissented on the award of benefits under § 11-9-505(a), opining that Castaneda failed to prove entitlement to those benefits. On appeal, NPCC argues that Castaneda did not meet her burden of proving that she is entitled to benefits pursuant to Ark. Code Ann. § 11-9-505.[2]
*916 On appeal, this court views the evidence and all reasonable inferences therefrom in the light most favorable to the Commission's decision and affirms that decision when it is supported by substantial evidence. Best W. Inn & Union Ins. of Providence v. Paul , 2014 Ark. App. 520, at 3-4, 443 S.W.3d 551, 553-54. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. Id. We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. Id. The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. Id.
Arkansas Code Annotated section 11-9-505(a)(1) provides:
Any employer who without reasonable cause refuses to return an employee who is injured in the course of employment to work, where suitable employment is available within the employee's physical and mental limitations, upon order of the Workers' Compensation Commission, and in addition to other benefits, shall be liable to pay to the employee the difference between benefits received and the average weekly wages lost during the period of the refusal, for a period not exceeding one (1) year.
In order for Ark. Code Ann. § 11-9-505(a)(1) to apply, the employee must prove by a preponderance of the evidence that (1) the employee sustained a compensable injury; (2) suitable employment which is within the employee's physical and mental limitations is available with the employer; (3) the employer has refused to return the employee to work; and (4) the employer's refusal to return the employee to work is without reasonable cause. Torrey v. City of Fort Smith , 55 Ark. App. 226, 934 S.W.2d 237 (1996).
The parties stipulated that Castaneda sustained a compensable injury. NPCC argues that the evidence does not support the Commission's findings that NPCC had suitable employment within her qualifications and restrictions and that NPCC refused to return her to work.[3]
NPCC first argues that the evidence fails to demonstrate that there were suitable employment positions available within Castaneda's physical and mental limitations. Here, appellee was terminated on April 1, 2016. NPCC immediately replaced appellee with an hourly employee to fill the position for the remainder of the school year. At the time appellee was released to her normal work duties on May 18, 2016, her normal workload at NPCC still existed and at that time her employment contract for the 2015-2016 school year had not yet expired. Therefore, the Commission's finding that suitable employment existed through the 2015-2016 school year is supported by substantial evidence.
Next, NPCC argues that the Commission's finding that it refused to return Castaneda to work is not supported by the evidence. Specifically, NPCC contends that it did not refuse to return her to work but rather that Castaneda chose not to return by failing to reapply for employment *917 following her termination. NPCC further argues that Castaneda's termination cannot be viewed as a refusal to return her to work because she had been notified the previous year at contract renewal that her position would be eliminated at the end of the 2015-2016 school year. The Commission found significant that Castaneda was terminated on April 1, 2016, at which time she was unable to return to work and that Castaneda's contract was terminated before she had an opportunity to request additional employment. Before her termination, Castaneda expressed to her supervisor, Jason Hudnell, that she wanted to return to work and apologized that she had not received a return date. The Commission placed great weight on Brewer's testimony. When Brewer was asked whether Castaneda was offered to return when she was released May 18, 2016, Brewer responded, "She was no longer employed with the college at that time." The Commission found that this statement supported only one reasonable conclusion-NPCC refused to return Castaneda to work within the meaning of Ark. Code Ann. § 11-9-505(a). The Commission is the ultimate arbiter of weight and credibility. Towler v. Tyson Poultry, Inc. , 2012 Ark. App. 546, at 2, 423 S.W.3d 664, 666.
NPCC cites Lepel v. St. Vincent Health Services, 96 Ark. App. 330, 241 S.W.3d 784 (2006) and Burke v. Arkansas Department of Correction , 2018 Ark. App. 231, 547 S.W.3d 745, in support of its argument. Both cases are distinguishable. In Lepel , the employee was offered, but failed to take advantage of, the opportunity to apply for other positions. This court affirmed the Commission's denial of benefits because the employer did not refuse to return Lepel to work.
In Burke , the employee was terminated because she had exhausted her FMLA leave. She sought benefits under Ark. Code Ann. § 11-9-505(a) on the basis that her employer refused to return her to work, but her claim was denied. The Commission did not find Burke to be credible. The documentary evidence established that the termination letter sent to Burke read, "Upon recovery and being able to perform all the essential job functions of your present position (correctional Officer) or any position that you apply for and have no other disqualifying factors, you will be considered for rehire." Although Burke acknowledged receiving the termination letter, she never reapplied because she thought her employer was obligated to reach out to her. This court affirmed the denial of benefits because the Commission found that without any attempt to return to work, it could not be said that the employer refused to return her to work.
The present case is distinguishable. Castaneda was never informed that she was still eligible for rehire after her termination, and Brewer specifically testified that NPCC does not typically call employees to return to work who have been terminated. In addition, NPCC terminated her while she was within her employment contract. The Commission's finding that NPCC refused to return Castaneda to work is supported by substantial evidence.
Affirmed.
Whiteaker and Brown, JJ., agree.

Under Arkansas law, the Commission is allowed to adopt the ALJ's opinion. SSI, Inc. v. Cates , 2009 Ark. App. 763, 350 S.W.3d 421. In doing so the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. Id. Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. Id.

In its brief, NPCC lists a second point on appeal-whether the Commission erred in its application of Ark. Code Ann. § 11-9-505(a) when it upheld the ALJ's finding that Castaneda's termination was without reasonable cause. Because NPCC does not address this point in the argument section of its brief, we will not address it on appeal. See Riddick v. Harris , 2016 Ark. App. 426, at 15, 501 S.W.3d 859, 870 (stating that if argument heading raises an issue but the body of the argument does not address the issue, we will not reach it on appeal).

Other than conclusory statements that it was Castaneda's choice not to pursue further employment with NPCC rather than an unreasonable refusal on the part of NPCC to return her to work, appellant makes no argument regarding the fourth Torrey factor-the employer's refusal to return the employee to work is without reasonable cause. Where an appellant fails to make a convincing argument or to cite convincing authority in support of it, we will not address the argument on appeal. Stutzman v. Baxter Healthcare Corp. , 99 Ark. App. 19, 24, 256 S.W.3d 524, 527 (2007).