Cite as 2023 Ark. App. 231

# ARKANSAS COURT OF APPEALS
### DIVISION III
No. CV-22-577

| | |
|---|---|
| ROBIN BUSH<br><br>APPELLANT<br><br><br>V.<br><br><br>SHERWOOD TRACTOR, INC.;<br>MIDWEST INSURANCE<br>COMPANY/MIC RISK MANAGEMENT<br>SERVICES, LLC; AND DEATH &<br>PERMANENT TOTAL DISABILITY<br>TRUST FUND<br><br>APPELLEES | Opinion Delivered April 19, 2023<br><br><br>APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION<br><br><br>[NO. G802764]<br><br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Robin Bush appeals the decision of the Arkansas Workers' Compensation

Commission (Commission) that she had failed to prove by a preponderance of the evidence

that the treatment she received for injuries she suffered in a fall were reasonable and

necessary in connection with her prior work-related injury and that a spinal-cord stimulator

was reasonable and necessary for the treatment of her work-related injury. She further

appeals the Commission's denial of her claim for temporary total-disability (TTD) benefits.

Appellees are Bush's employer, Sherwood Tractor, Inc.; its insurance carrier, Midwest

Insurance Company/MIC Risk Management Services, LLC; and the Death & Permanent

Total Disability Trust Fund. The only issue on appeal is whether the evidence is sufficient to support the Commission's decision. We affirm.

In 2018, Robin Bush was employed by Sherwood Tractor as a shop foreman and lead technician and was the only female certified mechanic for Mahindra tractors in the world. On March 23, 2018, she was removing a rear tire from a 100-horsepower tractor in order to rebuild the rear axle when she twisted and injured her back.

Her back injury was accepted as compensable, and she received conservative treatment, including physical therapy and spinal injections over the next four months. However, because she had received extensive conservative treatment without any improvement in symptomatology, she was eventually referred to Dr. J. Justin Seale, an orthopedist specializing in the spine, for an evaluation.

She was seen by Dr. Seale on August 1, 2018. He recommended a lateralized right L3 nerve root block around the dorsal root ganglion for diagnostic and therapeutic purposes. He also ordered an EMG of her right leg. He noted that if Bush had a positive right L3 nerve root block and/or a positive EMG, then decompression would be considered. If, however, she had a negative diagnostic result with the injection and a negative EMG, he would not recommend surgical intervention, and Bush would be at maximum medical improvement (MMI). He did opine, with a certain degree of medical certainty that her symptoms were at least 51 percent directly related to her work injury.

Dr. Carlos Roman performed the nerve root block on August 9, and Dr. Brent Sprinkle performed the EMG on August 13. The EMG showed no electrodiagnostic

evidence of a lumbar radiculopathy, peripheral neuropathy, or focal tibial or peroneal nerve entrapment. While she had almost complete relief of her symptoms after the nerve block, the pain gradually returned over the following two to three weeks, leading Dr. Seale to recommend decompression surgery. The surgery was performed on September 20.

After the surgery, Bush presented to Dr. Timothy Killough at Westside Family Medical Center complaining of severe right leg pain and weakness. He subsequently assessed her as having sympathetic reflex dystrophy and chronic pain. She was screened for future fall risk, although there had been no documentation of falls within the last year. He recommended medications and follow up with neurosurgery as scheduled. He indicated that Bush might need physical therapy, a tens unit, or rhizotomy to temporarily decrease sensation in her right lower extremity.

A lumbar spine MRI performed on October 8 showed mild to moderate degenerative disc and joint disease with moderate right and mild left neural foraminal stenosis at L3-4 and mild right and moderate left neural foraminal stenosis at L4-5. No central canal stenosis was identified. A bone scan on October 19 revealed asymmetric increased blood flow to the right foot and lesser degree of asymmetric increased blood ppl activity and delayed uptake bones of her right foot. Dr. Ben Bartnicke, the physician who performed the bone scan, opined that these findings could represent complex regional pain syndrome (CRPS) or could possibly be caused by altered weightbearing.

On October 22, Dr. Seale reviewed the October 8 MRI and the bone scan. He diagnosed Bush with CRPS—a very uncommon severe complication of lumbar

decompression. He released her back into the care of Dr. Roman. That same day, Dr. Roman noted that Bush's clinical presentation was compatible with reflex sympathetic dystrophy (RSD) of the right lower extremity. He diagnosed her with low back pain, degenerative disc disease, and CRPS of the right lower extremity. He proposed medication and lumbar sympathetic blocks to deal with her pain, which she received.

Bush continued to complain of pain to her right lower extremity. On December 5, Bush had multiplanar, multisequence imaging of her right knee. It revealed degenerative signal of the medial meniscus posterior horn, not meeting the strict MR criteria for meniscus tear. There was a small area of high-grade partial-thickness cartilage thinning at the superior aspect of the patella median ridge near the lateral patellar facet. Dr. Roman reviewed the report and recommended a referral for an orthopedic consult. He noted that her RSD had improved somewhat. He stated that further sympathetic injections were not necessary.

Bush was next evaluated by orthopedist Dr. Eric Gordon. He noted that she had had right knee pain since her knee gave way after having back surgery, causing her to fall. He indicated that her right knee pain was likely secondary to RSD with functional giving way and limp likely secondary to pain limitations and deconditioning. He recommended physical therapy and referred her back to Dr. Roman for treatment of her RSD.

Bush continued to be seen by Dr. Roman from December 21, 2018, to June 21, 2019. During that time, Dr. Roman prescribed medication, physical therapy, a lumbar epidural injection, and selective nerve root blocks. He allowed her to return to work with light-duty restrictions.

On September 19, 2019, Bush presented to the Arkansas Spine and Pain Center and was seen by Dr. Amir Qureshi. She reported a sudden onset of pain radiating to her right lower extremity. He recommended a spinal-cord stimulator trial to see if it would help improve her RSD, CRPS, and failed back surgical pain.

On October 21, Bush underwent an independent functional capacity evaluation (FCE). The FCE concluded that Bush had the ability to work at the light-physical-demand level.

Bush was seen again by Dr. Roman on October 29. He placed her at MMI with an 8 percent impairment rating at that time. He further agreed with the FCE that she was capable of performing light-duty work.

Approximately a week later, Bush was seen again by Dr. Killough. Bush indicated that she would like to try milder pain medication. She was screened for future fall risk, and the treatment notes indicate documentation of two or more falls within the past year.

In a follow-up visit on January 31, 2020, Bush asked Dr. Killough his opinion on the use of a pain pump or a cord stimulator for pain management. The notes do not indicate Dr. Killough's opinions on either device.

Bush returned to the Arkansas Spine and Pain Center and was seen by Khairunnisa Khan, APRN, on February 3. Her notes included Dr. Qureshi's opinion that he would like to proceed with the spinal-cord-stimulator trial to see if it would help improve her RSD, CRPS, and failed back surgical pain. Her notes included recommendations for trigger point

injections and medication to help control her pain. The same recommendations were made after follow-up visits on March 2 and April 20.

Another MRI was performed on May 5. It showed moderate disc degenerative changes at L3-L4, including protrusions at L3-L4 and protrusion/extrusion at L4-L5, producing moderate to severe narrowing of the thecal sac. It further indicated a protruding component at the foraminal locations of L2-L3 on the right, bilaterally at L3-L4, and on the right at L4-L5 contribute to mild to moderate foraminal narrowing, greatest on the right at L3-L4. It also indicated moderate lower lumbar facet arthropathy and ligamentum flavum thickening.

Nurse Practitioner Khan reviewed the MRI results with Bush on June 8 and referred her to Dr. Ali Raja[1] to see if surgery would be beneficial. All other recommendations remained the same.

On August 5, Bush presented to the White County Medical Center after a fall from a porch. The history given was as follows:

> Patient fell about 4 feet off a porch landing on her left lateral ribs. Patient states this happened about 1 hour ago and [sic] Rose Bud. No loss consciousness. No head injury. No neck or back pain. No abdominal pain.

The medical records do not mention any claim of leg weakness or assertion that her legs gave out, thereby contributing to or causing the fall. A chest CT revealed fourth and fifth lateral

---

[1]Dr. Raja is sometimes identified as Dr. Raji in the appellate record; however, he is identified as Dr. Raja in the medical records. To avoid confusion, we will use the spelling contained in the medical records.

left rib fractures but no pneumothorax. The history on the CT indicated only left chest pain after her fall.

Bush was again seen by Nurse Practitioner Khan on September 8. She stated that Bush had had lumbar sympathetic blocks and nerve blocks, which had helped in the past, but she would still like to see whether the spinal-cord stimulator would help with her pain. However, it was noted in her medical records that it should first be determined whether she would be a surgical candidate before proceeding with the spinal-cord stimulator or Superion L4-5.

On September 20, Bush returned to White County Medical Center complaining of numbness and lower back pain as well as tenderness to her right lower back. An MRI revealed no lumbar spine fracture, no significant lumbar spine canal or neural foraminal stenosis, and no significant degenerative changes. On September 22 and October 6, Bush underwent radiofrequency ablations of the right and left lumbar L4-L5 medial branch nerves.

Bush then began further treatment with Dr. Raja. She saw him on October 26, 2020, and on February 22 and March 25, 2021. Dr. Raja recommended surgery. On March 26, Bush underwent an L3-L4 and L4-L5 laminectomy for decompression. A follow-up wound check on April 9, 2021, indicated that she tolerated the procedure well.

Bush made a claim for benefits. Sherwood Tractor stipulated that Bush had sustained a compensable work injury to her back on March 23, 2018. Sherwood Tractor, however, denied Bush's claims that the injury Bush sustained was a compensable-consequence injury

7

as a result of her August 5 fall from the porch; that a spinal-cord stimulator was reasonable and necessary; and that she was entitled to TTD benefits.

A hearing before the administrative law judge (ALJ) was held on November 9, 2021. Bush was the sole witness at that hearing. She testified to her duties while employed by Sherwood Tractor as well as the work she performed with her business, The Robin's Nest. She claimed that she closed her business after returning to work at Sherwood Tractor and that she did not perform any work at The Robin's Nest after her employment with Sherwood Tractor had terminated. She stated that she did not rent out her shop but did allow others to use it. She stated that after her injury, she was able to perform light-duty work for Sherwood Tractor, such as warranty work and answering the telephone. But her employment ended because Sherwood Tractor did not have any permanent light-duty work available to her.

When asked about her trip to the emergency room after her fall from the porch and the fact that the medical records did not mention that her leg had given out, she stated that she did not remember what she told the medical-care providers because she was in pain. However, she remembered telling them about her leg because they kept trying to put a blanket over her, and she kept telling them not to put one on her leg. She didn't know why they did not mention it in their reports.

She also testified that the laminectomy performed by Dr. Raja in 2021 was a "miracle." There were no medical records submitted to show that she had any issues after that surgery.

The ALJ issued an order concluding that Bush had satisfied her burden of proving that her treatment by Doctor Raja, Doctor Qureshi, and Nurse Practitioner Kahn was reasonable and necessary and that she was entitled to TTD from March 26 through April 9, 2021. He found, however, that she failed in her burden of proving that she was entitled to TTD for any other dates and that the treatment by Dr. Killough after Dr. Roman's finding of MMI was reasonable and necessary. He also found that she failed in her burden of proving that the treatment she received at the White County Medical Center emergency room on August 5, 2020, was reasonable and necessary in connection with her work-related injury because it was the result of an intervening cause. Finally, the ALJ found that she failed to prove that a spinal-cord stimulator was reasonable and necessary.

Bush appealed the decision to the Full Commission. The Commission affirmed and adopted the decision of the ALJ. This appeal followed.

I. *Standard of Review*

When the Commission affirms and adopts the ALJ's opinion, thereby making the findings and conclusions of the ALJ the Commission's findings and conclusions, we consider both the ALJ's opinion and the Commission's opinion in our review. *Watson v. Highland Pellets, LLC*, 2022 Ark. App. 132, 643 S.W.3d 267. When reviewing a decision of the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Rothrock v. Advanced Env't'l Recycling*, 2018 Ark. App. 88, at 4, 544 S.W.3d 61, 64. Substantial evidence exists only if reasonable minds could have

9

reached the same conclusion without resort to speculation or conjecture. *White Consol. Indus. v. Galloway*, 74 Ark. App. 13, 45 S.W.3d 396 (2001). The Commission is the ultimate arbiter of weight and credibility. *Fuller v. Pope Cnty. Judge*, 2018 Ark. App. 1, at 5, 538 S.W.3d 851, 855. We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Cedar Chem. Co. v. Knight*, 99 Ark. App. 162, 258 S.W.3d 394 (2007). Therefore, the issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding. *Geo Specialty Chem. v. Clingan*, 69 Ark. App. 369, 13 S.W.3d 218 (2000). This court has held that we cannot undertake a de novo review of the evidence because we are limited by our standard of review in workers'-compensation cases. *See K II Constr. Co. v. Crabtree*, 78 Ark. App. 222, 79 S.W.3d 414 (2002).

## II. *Compensable-Consequence Injury*

Bush first challenges the Commission's finding that the injury she sustained after her August 5, 2020 fall from her porch was not a compensable-consequence injury. The Commission found that the treatment she received after the fall was not reasonable and necessary in connection with her work-related injury because it was the result of a non-work-related intervening cause. Bush argues that her legs would continuously give out due to the CRPS from her work-related back injury and that her leg gave out on August 5, causing her fall. Therefore, the injuries she sustained after the fall were compensable-consequence injuries.

Arkansas Code Annotated section 11-9-508(a) (Repl. 2012) requires an employer to provide an injured employee such medical services as may be reasonably necessary in connection with the injury received by the employee. Benefits are not payable for conditions resulting from a non-work-related independent intervening cause following a compensable injury which causes or prolongs a disability or need for treatment. Ark. Code Ann. § 11-9-102(4)(F)(iii) (Supp. 2021). However, when the primary injury is shown to have arisen out of and in the course of employment, the employer is responsible for any natural consequence that flows from that injury. *Ingram v. Tyson Mexican Original*, 2015 Ark. App. 519, at 5–6. For this rule to apply, the basic test is whether there is a causal connection between the injury and the consequences of such. *Id.* at 6. The burden is on the employee to establish the necessary causal connection. *Id.* Whether a causal connection exists between two episodes is a question of fact for the Commission. *Id.*

At the hearing, Bush testified that her CRPS sometimes causes her legs to give out and that her August 5 fall from her porch was caused by her right leg going out. Thus, she contends that her injuries and subsequent treatment are causally related to her compensable back injury and should have been found compensable. However, the emergency-room notes just reflect that a fall occurred. There is no mention of her leg going out or her CRPS.

As noted above, Bush bore the burden of establishing the necessary causal connection. While Bush does have a history of leg weakness, falls can occur for a multitude of unrelated reasons. Bush did not recall telling the hospital her leg gave out and caused her fall, and the medical records do not reveal that she made such a claim at the time of

11

treatment. As the Commission noted, it is common practice for medical staff in emergency rooms to question conscious patients regarding the mechanism of injury, specifically when falls are involved. This information is important to ensure that, in addition to the injuries sustained in the fall, there are no underlying medical conditions necessitating treatment. Thus, the fact that the medical records are silent regarding this information is telling. Viewing the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission as we must do, there was substantial evidence to support the Commission's findings.

## III. *Spinal-Cord Stimulator*

Bush next argues that the Commission erred in finding that the spinal-cord stimulator is not reasonable and necessary. She argues that it is undisputed that she sustained a compensable back injury and that she suffers from CRPS. A spinal-cord stimulator was recommended to treat her pain from her condition. Thus, the spinal-cord stimulator is reasonable and necessary and should have been granted.

Arkansas Code Annotated section 11-9-508(a) requires the employer of an injured employee to promptly provide such medical and surgical services "as may be reasonably necessary in connection with the injury received by the employee." The employee must prove, by a preponderance of the evidence, that medical treatment is reasonable and necessary. *Wal-Mart Stores, Inc. v. Brown*, 82 Ark. App. 600, 120 S.W.3d 153 (2003). What constitutes reasonably necessary treatment is a question of fact for the Commission, which has the duty to use its expertise to determine the soundness of medical evidence and to

12

translate it into findings of fact. *Hamilton v. Gregory Trucking*, 90 Ark. App. 248, 205 S.W.3d 181 (2005). When the Commission denies a claim due to the claimant's failure to meet his or her burden of proof, the substantial-evidence standard of review requires this court to affirm the Commission's decision if the opinion displays a substantial basis for the denial of relief. *Carrick v. Baptist Health*, 2022 Ark. App. 134, at 2, 643 S.W.3d 466, 469–70. We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id.*

Here, there was other evidence to support the Commission's determination. First, the spinal-cord stimulator was recommended by Dr. Qureshi after one visit with Bush. Dr. Roman, who had actively treated Bush's condition for over a year, disagreed with Dr. Qureshi's recommendation. Thus, there was conflicting medical evidence regarding its necessity. Second, Bush initially opted for surgical intervention rather than the spinal-cord stimulator. Dr. Qureshi performed two radiofrequency ablations, and Dr. Raja performed an L3-4 and L4-5 laminectomy for decompression. There is no evidence in the record that the spinal-cord stimulator was still recommended after her multiple surgical interventions. Thus, there is substantial evidence in the record to support the Commission's conclusion that Bush failed in her burden of proving that the spinal-cord stimulator was reasonable and necessary.

IV. *TTD Benefits*

13

Finally, Bush argues that the Commission erred in denying her request for TTD benefits. She contends that she is entitled to these benefits because she credibly testified that she has not worked since the date of termination; that her former business, The Robin's Nest, is not an active business; and that she has been approved for Social Security disability benefits.

In order to be entitled to TTD benefits for an unscheduled injury, a claimant must prove by a preponderance of the evidence that she remains within her healing period and suffers a total incapacity to earn wages. *Rogers v. Aramark*, 2022 Ark. App. 507, at 4, 657 S.W.3d 196, 199. Here, Dr. Roman opined that Bush had reached MMI on October 21, 2019, and released her to light-duty work. Bush had been performing light-duty work provided by her employer until her restrictions became permanent and her employer could not accommodate her restrictions on a permanent basis. None of her treating physicians opined that she was unable to work, and Bush even admitted on cross-examination that she was able to perform light-duty work consisting of warranty work, paperwork, and answering the phone. As a result, Bush failed to prove that she suffers from a total incapacity to earn wages.

As stated above, the question before us is not whether we might have reached a different result or whether the evidence would have supported a contrary finding, it is whether there is substantial evidence to support the Commission's conclusions. For the reasons set forth above, we affirm the Commission's decision.

Affirmed.

14

VIRDEN and HIXSON, JJ., agree.

*Laura Beth York*, for appellant.

*Ledbetter, Cogbill, Arnold & Harrison, LLP*, by: *Laura J. Pearce*, for appellees.