Cite as 2024 Ark. App. 597

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-23-649

| | | |
|---|---|---|
| LAURA EASLEY | | Opinion Delivered December 4, 2024 |
| | APPELLANT | |
| | | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G906350] |
| V. | | |
| COLLEGE HILL MIDDLE SCHOOL AND ARKANSAS SCHOOL BOARDS ASSOCIATION | | |
| | APPELLEES | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**CINDY GRACE THYER, Judge**

Appellant Laura Easley challenges that portion of the decision of the Arkansas Workers' Compensation Commission ("the Commission") that failed to award her temporary total-disability (TTD) benefits for the period of time that she remains in her healing period. Appellee College Hill Middle School ("College Hill") does not disagree with her contention that her entitlement to TTD would extend until such time as she reaches maximum medical improvement (MMI) or returns to work. College Hill nonetheless asserts that the Commission erred in finding that Easley was entitled to additional medical treatment for her compensable injury. We affirm in part and reverse and remand in part.

The facts of this case are largely undisputed. Easley worked at College Hill as a paraprofessional working primarily with kindergartners and first and second graders. On

August 13, 2019, she was moving a box at school when she stepped into an air-conditioning vent that was covered by a carpet. She fell forward, landing on her knees and hands, and immediately experienced pain and swelling in her right ankle. She initially went to HealthCare Express, where she was diagnosed with a right-ankle strain and a thoracic-spine strain.[1]

Easley went back to HealthCare Express on August 20 because her ankle had not improved. She underwent an MRI of her right ankle on August 27, which revealed "complete tears of the anterior talofibular and the calcaneofibular ligaments" as well as a partial tear of the peroneus brevis tendon. Easley was then referred to Dr. Ardoin at OrthoArkansas, and he consulted with her on September 16. Four days later, he performed a right ankle arthroscopy and ligament reconstruction surgery. She was placed in a boot, ordered to remain off work until September 30, and directed to begin physical therapy.

---

[1]Easley also experienced pain in her neck and upper back. An MRI of her cervical spine revealed a central disc protrusion at C6-C7 and mild to moderate degenerative disc disease and facet arthropathy. She saw Dr. Bruffett at OrthoArkansas, who opined that the C6-C7 disc herniation was causally related to her fall at work. Dr. Bruffett performed an anterior cervical decompression at C6-C7 on January 31, 2020. When he saw her for a postsurgical follow up in February 10, Dr. Bruffett continued to keep her off work but said, "[W]hen I see her back in a month, I will release her back to teaching [and] she will be at maximum medical improvement six weeks after that." Dr. Bruffett subsequently determined she was at MMI from her cervical surgery on April 22 and released her from his care with no restrictions. Although Easley subsequently sought additional medical treatment for her spinal injuries, the ALJ concluded that she had not proved her entitlement to additional treatment. Easley, however, does not assign error to this issue on appeal, and we do not address it further.

Easley continued to experience pain, swelling, and stiffness in her ankle in the following months. Dr. Ardoin recommended that she obtain a new brace that fit better and continue with physical therapy; he also continued her off work "until released by doctor."

Although the pain and swelling in Easley's right ankle persisted, Dr. Ardoin determined she was at MMI on June 22, 2020, and he released her without work restrictions after assigning a permanent impairment rating of 2 percent to the whole person, 5 percent to the right lower extremity, and 7 percent to the right foot.

On August 22, 2020, however, Easley fell at home and "rolled" her right ankle, reinjuring it. Eventually, because of her ongoing severe pain, she and College Hill agreed that she was unable to perform her job duties and that there were no other duties she could perform at the school. Easley ultimately resigned her position on September 16. She returned to Dr. Ardoin on September 28; he observed no fracture or dislocation but assessed her with right ankle peroneal tendinitis and plantar fasciitis. He recommended physical therapy and that she continue to wear her ankle brace.

Easley followed up with Dr. Ardoin on January 18, 2021, still complaining of pain in her foot and ankle. Dr. Ardoin ordered an MRI of her right ankle to evaluate the peroneal tendons. The MRI was performed on March 8. When Dr. Ardoin reviewed the MRI, he saw "evidence of a 5x2x6mm osteochondral lesion within the medial talar dome with bone edema as well as advanced tendinosis and fraying of the inframalleolar portion of the peroneal brevis tendon as well as inframalleolar portion of the peroneal longus tendon." Dr. Ardoin's report stated further as follows:

Impression:   Right peroneal tendon tendinopathy with pain and likely recurrent tear and medial talar osteochondral lesion which likely resulted after the ankle gave way back in August 2020. This is all related to the work injury without [sic] reasonable degree of medical certainty.

Plan:   At this point I think the only other option I have for her is a right ankle arthroscopy with treatment of medial talar osteochondral lesion, peroneal tendon debridement possible tenodesis versus allograft tendon reconstruction.

He expected Easley to be at MMI in "approximately 6 to 9 months" and put her "on light duty work restrictions, sit-down only for now."

Dr. Ardoin performed surgery on Easley's ankle again in June 2021. Part of her postoperative plan was to begin "physical therapy for aggressive range of motion and strengthening." Despite months of therapy, however, by December 2021, Easley continued to have pain and swelling in her ankle. Her physical therapy progress note of December 6 stated that she "demonstrate[d] minimal improvements in right ankle [range of movement]" and "currently has 0/6 goals met and has only minimal progression towards ROM, strength, and functional mobility goals."

Easley returned to Dr. Ardoin in January 2022, presenting with swelling, redness, and pain in her foot and ankle. Dr. Ardoin ordered another MRI as well as a bone scan and continued her off work. The bone scan revealed "increased uptake on blood pool and delayed images at the distal end of the fibula and in the region of the anterior aspect of the distal end of the tibia or anterior tibiotalar joint just medial to midline. The pattern of uptake is not typical for complex regional pain syndrome. Additional differential considerations would include trauma and arthritis." The MRI did not identify a complete tear in the

peroneus longus tendon, but there was "irregularity of the peroneus brevis tendon medially inferior to the level of the lateral malleolus[,]" although it was "unclear if this represents postop changes or tear." In addition, there was an "unstable appearing osteochondral lesion within the medial talar dome." Dr. Ardoin saw Easley after the MRI and told her that her "tendon looks like garbage." He suggested a custom Arizona brace but opined that she might need another fusion, although he later said that the fusion would be "the last resort."

In June 2022, Easley underwent an independent medical examination (IME) by Dr. Martin. On June 13, 2022, Dr. Martin concluded that

> unfortunately she has chronic pain in the right ankle, she has lots of scarring around the peroneal tendons, she has some evidence of this medial talus osteochondral lesion on the talus but . . . less edema on the most recent MRI compared with the previous. In my opinion the patient would likely not experience significant relief from an ankle arthrodesis and she is not a candidate for ankle arthroplasty. In my opinion she has reached her maximum medical improvement.

Easley returned to Dr. Ardoin later in June; he noted that she was "not getting any better [and] still has chronic pain in the ankle." He concluded that she was

> at MMI for conservative management. I reviewed the independent medical examination from Dr. Martin; however, I do feel that the patient would benefit from a subtalar joint arthrodesis as a salvage procedure since she cannot really wear her brace without significant pain from the pressure applied to the scar. I think subtalar joint arthrodesis would allow her to not depend on the peroneal tendons which are chronically painful and it would be a procedure that would likely stop her pain[.] [H]owever she needs to lose weight and hopefully by allowing her to be pain-free this may help her in the long run in regards to total body function.
>
> I do think this is greater than 51% related to the work injury she sustained. I expect MMI to be 9 months postop. Patient is disabled and does not work.

Because of Dr. Martin's IME, however, the requested fusion surgery for Easley's ankle was denied. As a result, Easley's counsel wrote to Dr. Ardoin, asking for a letter expressing his opinion on the necessity of the procedure. Dr. Ardoin replied that Easley had "chronic peroneal tendon pathology which has failed surgical and conservative management. Other treatment options for the patient would be a subtalar joint arthrodesis, which would hopefully stop her pain [and] would allow her to no longer rely on the peroneal tendons for ankle stability." He added that the procedure "may not allow her to return to work due to her multiple other medical problems [but] if her ankle pain resolves with the arthrodesis surgery, then she may become more active, lose weight, and feel better, which could give her the potential to return to her previous occupation."

Because College Hill denied Easley's request for the additional surgery, the matter was litigated before an administrative law judge (ALJ) to determine whether she was entitled to the additional medical treatment that Dr. Ardoin recommended for her right ankle injury as well as her entitlement to TTD benefits "from August 22, 2020, through March 8, 2021; and from July 13, 2022, through a date yet to be determined."[2] The ALJ noted that Easley's right-ankle injury "is scheduled and *she is entitled to TTD benefits during the period of time when she remained within a healing period and was not working.*" (Emphasis added.)

---

[2]College Hill accepted Easley's request for additional TTD benefits and began paying her as of March 9, 2021. It continued to pay TTD benefits through July 12, 2022, after Dr. Martin determined she had reached MMI on June 14, 2022.

6

After considering the medical evidence and Easley's testimony, the ALJ determined that Dr. Ardoin's opinion regarding the necessity of the proposed ankle surgery should be given more weight than Dr. Martin's. Similarly, the ALJ found Easley to be a "credible and sincere" witness and concluded that the proposed surgery was "reasonably necessary taking into consideration the fact that she's been suffering since the initial accident of 2019 and would like the opportunity to regain her mobility and functionality." The ALJ therefore concluded:

> The claimant has met her burden of proof in demonstrating the right ankle fusion surgery Dr. Ardoin has recommended is related to and reasonably necessary in light of her compensable injury.
>
> . . . .
>
> The claimant has met her burden of proof in demonstrating she is entitled to additional TTD benefits from August 22, 2020, through March 8, 2021, and from March 9, 2021, through June 14, 2022, the date Dr. Martin opined she had reached MMI.

Easley subsequently appealed the ALJ's findings regarding the duration of her entitlement to TTD benefits to the full Commission. College Hill cross-appealed the ALJ's opinion as well. The Commission affirmed and adopted the ALJ's findings and conclusions. Easley then timely appealed the Commission's decision to this court.

When the Commission affirms and adopts the ALJ's opinion, thereby making the findings and conclusions of the ALJ the Commission's findings and conclusions, we consider both the ALJ's opinion and the Commission's opinion in our review. *Watson v. Highland Pellets, LLC*, 2022 Ark. App. 132, 643 S.W.3d 267. When reviewing a decision of the

Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Rothrock v. Advanced Envt'l Recycling*, 2018 Ark. App. 88, at 4, 544 S.W.3d 61, 64. Substantial evidence exists only if reasonable minds could have reached the same conclusion without resort to speculation or conjecture. *Bush v. Sherwood Tractor, Inc.*, 2023 Ark. App. 231, 666 S.W.3d 853. We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Cedar Chem. Co. v. Knight*, 99 Ark. App. 162, 258 S.W.3d 394 (2007).

Before addressing Easley's argument on appeal, we first dispose of College Hill's attempt to cross-appeal the Commission's decision that she proved her entitlement to additional medical treatment in the form of the third ankle surgery recommended by Dr. Ardoin. Appeals from the Commission to this court are governed by Arkansas Code Annotated section 11-9-711(b)(2) (Repl. 2012), which provides that appeals from the Commission to this court "shall be allowed as in other civil cases." Section 11-9-711(b)(1)(A) states that an appeal to this court may be taken by filing a notice of appeal within thirty days from the receipt of the order or award of the commission; under subdivision (b)(1)(B), "[a]ny other party to the dispute may cross appeal by filing in the office of the commission a notice of cross appeal to the Court of Appeals within fifteen (15) days after the notice of appeal is filed, except that in no event shall a cross appellant have less than thirty (30) days from his

or her receipt of the order or award of the commission within which to file a notice of cross appeal."

A cross-appeal is an appeal by an appellee who seeks something more than was received in the trial court. *Ark. Dep't of Fin. & Admin. v. Pharmacy Assocs., Inc.*, 333 Ark. 451, 970 S.W.2d 217 (1998). Case law is well settled that when an appellee seeks something more than he or she received in the lower court, a notice of cross-appeal is necessary to give us jurisdiction of the cross-appeal. *Boothe v. Boothe*, 341 Ark. 381, 17 S.W.3d 464 (2000); *Carroll v. Carroll*, 2011 Ark. App. 356, 384 S.W.3d 50. College Hill, however, failed to file a notice of cross-appeal. We therefore lack jurisdiction to consider its arguments, and we affirm the Commission's finding that Easley proved her entitlement to additional medical treatment.

We turn then to Easley's sole argument on appeal wherein she contends that the Commission erred in not awarding her TTD benefits "from July 14, 2022 to a date yet to be determined." An injured employee is entitled to TTD benefits when he or she is totally incapacitated from earning wages and remains in his or her healing period. *Bankston v. Univ. of Ark. Little Rock*, 2017 Ark. App. 72, at 6, 510 S.W.3d 825, 829. The "healing period" is defined as the period necessary for the healing of an injury resulting from an accident. Ark. Code Ann. § 11-9-102(12) (Supp. 2023). The healing period ends when the employee is as far restored as the permanent nature of his injury will permit. *St. Edward Mercy Med. Ctr. v. Dart*, 2011 Ark. App. 583. If the underlying condition causing the disability has become more stable and if nothing further in the way of treatment will improve that condition, the healing period has ended. *Mad Butcher, Inc. v. Parker*, 4 Ark. App. 124, 628 S.W.2d 582

(1982). Conversely, the healing period has not ended so long as treatment is administered for the healing and alleviation of the condition. *Ark. Dep't of Hum. Servs. v. Shields*, 2018 Ark. App. 247, 548 S.W.3d 208. Moreover, Arkansas Code Annotated section 11-9-521(a) (Repl. 2012), which applies to scheduled injures like Easley's, provides that a claimant is entitled to TTD benefits "during the healing period or until the employee returns to work, whichever occurs first." *See also City of Ft. Smith v. Kaylor*, 2019 Ark. App. 517, 588 S.W.3d 803.

Here, the Commission clearly determined that Easley was unable to return to work: "[I]t appears from the preponderance of the evidence of record that the nature of the claimant's symptoms rendered her unable to perform her job duties, and the respondents were unable to provide a light duty or other related job to her which accommodated her symptoms and resulting temporary disability [and] symptoms; the claimant was forced by the prevailing circumstances to submit a letter of resignation." Further, Easley is still in her healing period because Dr. Ardoin has not yet been able to perform the recommended surgery, and Dr. Ardoin estimated that even after the surgery, she would not reach MMI for another nine months.

Despite this, the Commission concluded that Easley was entitled to additional TTD benefits "from March 9, 2021, through June 14, 2022, the date Dr. Martin opined she had reached MMI." This finding is clearly incompatible with the Commission's previous determination that it agreed with Dr. Ardoin's conclusions that the surgery was reasonably necessary and related to her compensable injury and that Easley would not reach MMI until nine months following a surgery that had yet to occur. It follows that the Commission's

award of TTD benefits through the date on which *Dr. Martin* found Easley to be at MMI is irreconcilable with its acceptance of Dr. Ardoin's conclusions and its finding that "she is entitled to TTD benefits during the period of time when she remained within a healing period and was not working." We therefore reverse that part of the Commission's decision regarding Easley's TTD benefits and remand with instructions to enter an order extending Easley's TTD to a date to be determined.

Affirmed in part; reversed and remanded in part.

GLADWIN and HIXSON, JJ., agree.

*Moore, Giles Matteson, LLP*, by: *Gregory Ross Giles*, for appellant.

*Worley, Wood & Parrish, P.A.*, by: *Melissa Wood*, for appellees.